NO. 07-09-0277-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 JUNE 16, 2011

 JOSEPH E. HANCOCK, APPELLANT

 v.

 EASWARAN P. VARIYAM, APPELLEE

 FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2006-537,571; HONORABLE WILLIAM C. SOWDER, JUDGE

Before QUINN, C.J., HANCOCK and PIRTLE, JJ.[1]

 OPINION

 Appellant, Joseph E. Hancock, appeals from a judgment entered in
a defamation action in favor of Appellee, Easwaran P. Variyam,
following a jury trial. In support, Hancock presents three issues:
(1) whether the trial court erred in finding as a matter of law that
Hancock's written statements were libel per se; (2) whether Variyam's
evidence of damages is legally and factually insufficient; and (3)
whether the trial court erred in admitting an anonymous letter at
trial. We affirm.

 Background

 At all relevant times, Hancock and Variyam were physicians
practicing internal medicine and gastroenterology at the Texas Tech
University Medical Center in Lubbock, Texas. Both men were on the
faculty of Texas Tech. Variyam was formerly the Chief of the
Gastroenterology Division from September 2000 until January 2006, and
as such, he was Hancock's supervisor when the following events
occurred.

 On the morning of January 2, 2006, a dispute arose between the
two physicians related to the transfer of patients from Hancock's care
to Variyam's care. After Variyam wrote a letter to Hancock alleging
he had disregarded patient care, Hancock responded with a letter of
resignation wherein he stated, in pertinent part, as follows:

 Please find a copy of letter from Dr Variyam letter (sic) which I
 received today. Due to Dr Variyam's reputation for lack of
 veracity, a majority of my communications and interactions is
 (sic) recorded or witnessed and subsequently verified as in this
 case.

 My telephone conversation was over the speakerphone and witnessed
 by a third party who will dispute Dr. Variyam's position. The
 interaction by and through the Department of Internal Medicine
 this morning is again refutable.

 Dr Variyam deals in half truths, which legally is the same as a
 lie.

 It is Dr. Variyam's ethical behavior that should be challenged.

 Hancock addressed his letter to Bernhard Mittemeyer, Dean of the
School of Medicine, and copied Donald Wesson, Chair of Internal
Medicine, David Hodges, Associate Professor and Director of the UMC
Endoscopy Center, Variyam and the Accreditation Council for Graduate
Medical Education (ACGME) in Chicago, Illinois.[2] In February of
2006, Variyam was removed as Chief of the Gastroenterology Division.

 In December 2006, Variyam filed an original petition alleging
that Hancock's letter had defamed him. Variyam sought special damages
for loss of past and future income as well as general damages for
injury to his reputation and mental anguish. He also sought exemplary
damages. In November 2008, Variyam and Hancock filed an agreed order
wherein Variyam agreed to forego special damages arising out of his
removal as Chief of the Gastroenterology Division, but retained his
defamation claim under a per se theory. Hancock continued to assert
truth as an affirmative defense.

 In May 2009, a three day jury trial was held. At its
conclusion, the trial court found that the statements in Hancock's
letter were libel per se. The jury rejected Hancock's affirmative
defense by finding that his statements[3] regarding Variyam were not
substantially true at the time they were made and that, by clear and
convincing evidence, the harm to Variyam resulted from malice on
Hancock's part. The jury awarded Variyam actual damages of $90,000[4]
and exemplary damages of $85,000. Variyam was also awarded
prejudgment interest of $6,455.68 and court costs. This appeal
followed.

 Discussion

 Hancock contends the trial court erred by finding, as a matter
of law, that his statements were libel per se because the statements
were ambiguous and did not injure Variyam in his office or occupation
as a physician. He also asserts that the evidence is legally and
factually insufficient to justify any award for mental anguish or
injury to reputation. He contends Variyam failed to prove that
Hancock's statements caused him any damage and, alternatively, that
the trial court erred by not issuing a jury instruction on proximate
cause. Lastly, he asserts the trial court erred by admitting an
anonymous letter at trial.

 Issue One - Libel per se

 Defamation is generally defined as the invasion of a person's
interest in his or her reputation and good name. Prosser & Keeton on
Torts § 111, at 771 (5th ed. 1984 & Supp. 1988). Defamation claims
are divided into two categories depending on how the defamatory
statement was communicated: libel for written communications and
slander for oral communications.[5]

 Defamation claims are also divided into two categories,
defamation per se and defamation per quod, according to the level of
proof required in order to make them actionable. Texas Disposal Sys.
Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 580
(Tex.App.--Austin 2007, pet. denied); Moore v. Waldrop, 166 S.W.3d
380, 384 (Tex.App.--Waco 2005, no pet.). Statements that are
defamatory per quod are actionable only upon allegation and proof of
damages. Texas Disposal, 219 S.W.3d at 580; Alaniz v. Hoyt, 105
S.W.3d 330, 345 (Tex.App.--Corpus Christi 2003, no pet.). That is,
before a plaintiff can recover for defamation per quod, he must carry
his burden of proof as to both the defamatory nature of the statement
and the amount of damages caused by the publication of that statement.
 Texas Disposal, 219 S.W.3d at 580; See also Leyendecker & Assocs.,
Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984); Peshak v. Greer, 13
S.W.3d 421, 426 (Tex.App.--Corpus Christi 2000, no pet.). By
contrast, in cases involving defamation per se, damages are presumed
to flow from the nature of the defamation itself and, in most
situations, a plaintiff injured by a defamatory per se communication
is entitled to recover general damages without specific proof of the
existence of harm. Bentley v. Bunton, 94 S.W.3d 561, 604 (Tex. 2002)
("Our law presumes that statements that are defamatory per se injure
the victim's reputation and entitle him to recover general damages,
including damages for loss of reputation and mental anguish."); Exxon
Mobil Corp. v. Hines, 252 S.W.3d 496, 501 (Tex.App--Houston [14th
Dist.] 2008, pet. denied); but see Gertz v. Robert Welch, Inc., 418
U.S. 323, 347-48, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (holding that,
so long as they do not impose liability without fault, States are free
to define for themselves the appropriate standard of liability in
defamation suits where a private plaintiff sues a media defendant for
speech involving a public issue). The United States Supreme Court
later clarified that the constitutional requirements of Gertz do not
prohibit the application of strict liability to defamation suits
involving private-figure plaintiffs who sue nonmedia defendants for
speech involving nonpublic issues. Dun & Bradstreet, Inc. v.
Greenmoss Builders, Inc., 472 U.S. 749, 760-61, 105 S.Ct. 2939, 86
L.Ed.2d 593 (1985). In suits involving such situations, courts
applying Texas law have applied strict liability in defamation per se
causes of action. See Thomas-Smith v. Mackin, 238 S.W.3d 503, 509
(Tex.App.--Houston [14th Dist.] 2007, no pet.); Peshak v. Greer, 13
S.W.3d 421, 425-26 (Tex.App.--Corpus Christi 2000, no pet.); Snead v.
Redland Aggregates Ltd., 998 F.2d 1325, 1334 (5th Cir. 1993). Because
the decision whether an alleged defamatory statement is defamatory per
se or per quod affects the level of proof required, that question is
initially determined by the trial court as a matter of law. Turner v.
KTRK TV, Inc., 38 S.W.3d 103, 114 (Tex. 2000); Musser v. Smith
Protective Servs., Inc., 723 S.W.2d 653, 654-55 (Tex. 1987).

 A communication is considered libel per se when it is so
obviously hurtful to the person aggrieved that no proof of its
injurious character is required to make it actionable. Clark v.
Jenkins, 248 S.W.3d 418, 437 (Tex.App.--Amarillo 2009, pet. denied),
cert. denied, __ U.S. __, 130 S.Ct. 52, 175 L.Ed.2d 21 (2009);
Houseman v. Publicaciones Paso Del Norte, S.A. de C.V., 242 S.W.3d
518, 524 (Tex.App.--El Paso 2007, no pet.). A false statement will
typically be classified as defamatory per se if it injures a person in
his office, profession, or occupation; Morrill v. Cisek, 226 S.W.3d
545, 549 (Tex.App.--Houston [1st Dist.] 2006, no pet.); charges a
person with the commission of a crime; Leyendecker, 683 S.W.2d at 374;
or imputes to him a loathsome disease. Bolling v. Baker, 671 S.W.2d
559, 570 (Tex.App.--San Antonio 1984, no writ).

 Whether a given statement is reasonably capable of a defamatory
meaning is a question to be decided by the trial court as matter of
law. See Musser, 723 S.W.2d at 654-55. The trial court should
construe the alleged defamatory communication as a whole in light of
the surrounding circumstances based upon how a reasonable person of
ordinary intelligence would perceive it, considering the surrounding
circumstances and the context of the statement. New Times, Inc. v.
Isaacks, 146 S.W.3d 144, 153 (Tex. 2003), cert. denied, 545 U.S. 1105,
125 S.Ct. 2557, 162 L.Ed.2d 276 (2005); Turner, 38 S.W.3d at 114.
This is an objective test, not a subjective one. New Times, Inc., 146
S.W.3d at 157. Thus, the parties' opinion of the statements, Musser
v. Smith, 690 S.W.2d 56, 58 (Tex.App.--Houston [14th Dist.] 1985),
aff'd, 723 S.W.2d 653 (Tex. 1987), or the defendant's intent in making
the statements have no bearing on whether they are defamatory.
Peshak, 13 S.W.3d at 426 ("We assume the words were intended because
they were used.") "Common sense requires courts to understand the
statement as ordinary men and women would"; Moore, 166 S.W.3d at 385,
and the question whether a statement is defamatory per se is only
submitted to the jury if the contested language is ambiguous or of
doubtful import. See Denton Pub. Co. v. Boyd, 460 S.W.2d 881, 884
(Tex. 1970). Otherwise, it is an issue of law for the trial court to
decide. Musser, 723 S.W.2d at 655. Therefore, according to this body
of law, a written communication, made by a nonmedia defendant,
concerning a private-figure individual and pertaining to a nonpublic
issue, which is obviously hurtful to the aggrieved party in his
profession or occupation, is libel per se.

 Standard of Review

 The standard of review applicable to alleged error concerning a
question of law is de novo. El Paso Natural Gas Co. v. Minco Oil &
Gas, 8 S.W.3d 309, 312 (Tex. 1999); Block v. Mora, 314 S.W.3d 440, 444-
45 (Tex.App.--Amarillo 2009, pet. dism'd). Therefore, in reviewing a
trial court's determination of libel per se, this Court must conduct a
de novo review. In doing so, this Court must exercise its own
judgment and redetermine each legal issue, according no deference to
the lower court's decision. Quick v. City of Austin, 7 S.W.3d 109,
116 (Tex. 1998); Block, 314 S.W.3d at 445.

 Analysis

 Hancock contends the statements at issue were not libelous per
se because they were ambiguous and extrinsic evidence was required to
interpret them. Alternatively, he contends the statements did not
injure Variyam in his office or occupation as a physician.[6] We
disagree.

 The trial court found that Hancock's written statements that
Variyam had a "reputation for lack of veracity" and "deal[t] in half
truths, which legally is the same as a lie" were libelous per se. See
Lartigue v. Southern Mut. Ben. Ass'n, 265 S.W. 742, 743 (Tex.Civ.App.--
Beaumont 1924, no writ) (printed circular held libelous per se where
it "unquestionably charged appellant with untruthfulness--with being a
liar--that he was telling lies"); Hibdon v. Moyer, 197 S.W. 1117, 1118
(Tex.Civ.App.--El Paso 1917, no writ) (article held libelous per se
where it unquestionably charged appellant with "untruthfulness");
Fleming v. Mattinson, 114 S.W. 650, 652 (Tex.Civ.App.--Texarkana 1908,
no writ) (newspaper article held libelous per se where statement
"clearly imputes to [plaintiff] a lack of veracity");[7] Mitchell v.
Spradley, 56 S.W. 134, 135 (Tex.Civ.App.--Houston 1900, no writ )
(article held libelous per se where statement denounced plaintiff as
"a liar").

 The trial court's determination is supported by the fact that
Hancock imputes dishonesty to Variyam in his profession or occupation
by addressing the letter to Variyam's superiors at Texas Tech and
ACGME. See Bradbury v. Scott, 788 S.W.2d 31, 38 (Tex.App.--Houston
[1st Dist.] 1990, writ denied) (letter libelous per se where writing
accused employee of a lack of fidelity and honesty in her dealings
with her employer). See also Bolling, 671 S.W.2d at 571 ("Generally,
spoken words imputing that a person is dishonest or unethical in the
practice of his employment have been held to be actionable per se.")
Hancock's open-ended statements affirmatively questioned Variyam's
ethical behavior as well as his reputation for being truthful and
honest to his co-workers and employers at Texas Tech and ACGME, where
he had submitted an application requesting that Texas Tech's
fellowship program be reinstated. Hancock agreed with Variyam's
counsel at trial that, if his statements about Variyam having a
reputation for untruthfulness were not true, then his statements
"could have a very, very serious affect on [Variyam's] character" and
would represent "character assassination." At trial, Variyam attested
to the importance of his professional reputation for telling the truth
in dealing with patients and other doctors, patient care, and research
when publishing abstracts and book chapters. He also testified that
"being untruthful would [also] affect his relationship with other
physicians that might send him business or work." Like lawyers and
bankers, a physician such as Variyam, by definition, depends greatly
on his reputation. See generally First Bank of Corpus Christi v. Ake,
606 S.W.2d 696, 702 (Tex.Civ.App.--Corpus Christi 1980, writ ref'd)
(citing Eidinoff v. Andress, 321 S.W.2d 368, 372-73 (Tex.Civ.App.--El
Paso 1959, writ ref'd n.r.e.)).

 Hancock asserts that the term "veracity" is ambiguous because it
is subject to two interpretations. In support he cites the parties'
testimony, i.e., Hancock testified "veracity" means accuracy while
Variyam testified "veracity" means truthfulness. It is well settled
that "the meaning of a publication, and thus whether it is false and
defamatory, depends on a reasonable person's perception of the
entirety of the publication and not merely on individual statements."
Bentley, 94 S.W.3d at 584. Moreover, as we stated earlier, the test
applied by the court to interpret the meaning of the publication is
objective; New Times, Inc., 146 S.W.3d at 157, and the parties'
interpretations and intentions are irrelevant. Peshak, 13 S.W.3d at
426; Musser, 690 S.W.2d at 58. Having duly considered the entirety of
the publication, the surrounding circumstances and the context of the
statement, we find that a reasonable person of ordinary intelligence
would perceive the statements in Hancock's letter as defamatory per
se. See State Medical Ass'n of Texas v. Committee for Chiropractic
Education, Inc., 236 S.W.2d 632, 634 (Tex.Civ.App.--Galveston 1951, no
pet.) ("It has been uniformly held by the courts of this state that to
impugn the veracity of a person is to defame him.")

 Hancock next asserts that he was merely expressing an opinion[8]
when he stated that Variyam had a "reputation for lack of veracity."
We disagree. However, even where statements may be characterized as
opinions, the statements may be defamatory nonetheless if they clearly
imply the existence of undisclosed facts that the person engaged in
conduct which would adversely reflect on his reputation. Shearson
Lehman Hutton, Inc., v. Tucker, 806 S.W.2d 914, 920 (Tex.App.--Corpus
Christi 1991, writ dism'd w.o.j.). True, as Hancock suggests, the
only way to gauge a person's reputation is through an examination of
the opinions expressed by others, however, Hancock's affirmative
statements imply that he had already undertaken that task and made his
conclusion. In other words, his statement implies the existence of
undisclosed facts known to Hancock indicating that Variyam had been
untruthful in the past with others. See Milkovich v. Lorain Journal
Co., 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).[9] See
also Bentley, 94 S.W.3d at 584.

 Hancock also contends that his statement "deals in half truths"
is ambiguous because of the phrase "deals in." The entirety of
Hancock's statement is "Dr. Variyam deals in half truths, which
legally is the same as a lie." (Emphasis added). Considering the
entire publication objectively, we believe a reasonable person of
ordinary intelligence would understand that Hancock is using the terms
"half truths" and "lies" interchangeably and the phrase "deals in"
means that Variyam "tells" half-truths or lies.[10] This is
particularly so given Hancock's prior statement that Variyam has a
"reputation for lack of veracity." In addition the phrase, Variyam
"deals in half truths, which legally is the same as a lie," also
implies knowledge of facts that lead to Hancock's conclusion. See
Milkovich, 491 U.S. at 18-19. See also Bentley, 94 S.W.3d at 584.

 Lastly, Hancock cites a string of slander cases for the
proposition that merely calling someone a "liar," "thief," or "crook,"
by itself, is not defamatory. See Gateway Logistics Group, Inc. v.
Dangerous Goods Management Australia PTY, LTD, No. H-05-2742, 2008
U.S. Dist. LEXIS 34246 (S.D. Houston Apr. 25, 2008) (statements in
question were oral statements even though the litigation involved both
libel and slander allegations); Moore, 166 S.W.3d 380; Billington v.
Houston Fire & Casualty Ins. Co., 226 S.W.2d 494 (Tex.Civ.App.--Fort
Worth 1950, no writ).

 The law has long recognized a difference between written charges
of falsehood or lack of veracity and oral charges in the area of per
se liability. Billington, 226 S.W.2d at 497 (quoting 53 C.J.S. LIBEL
AND SLANDER § 18, at 63) ("Written charges of falsehood or want of
veracity generally are libelous per se; but oral charges of this
character ordinarily are not slanderous per se"); Arant v. Jaffe, 436
S.W.2d 169, 176 (Tex.Civ.App.--Dallas 1968, no writ) (in the area of
per se defamation,"[t]he law recognizes the distinction between oral
and written imputations").[11] Because the cases cited by Hancock are
slander cases, we find these cases to be distinguishable and
inapposite.

 Therefore, applying a de novo review, we find the trial court
did not err in finding that the defamatory statements in question were
libel per se. Accordingly, issue one is overruled.

 Issue Two - Damages

 Hancock next asserts there is no evidence supporting the jury's
award of damages for mental anguish or injury to reputation. He also
asserts there is no evidence his statements proximately caused Variyam
any injury and the trial court erred by failing to instruct the jury
on proximate cause. Further, he contends Variyam's damages should be
denied because Variyam self-published Hancock's letter when he was
aware it was defamatory.

 Legal and Factual Sufficiency

 In conducting a legal sufficiency review, we must consider the
evidence in the light most favorable to the challenged finding,
indulge every reasonable inference to support it; City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005), and credit favorable evidence
if reasonable jurors could while disregarding contrary evidence unless
reasonable jurors could not. Id. at 827. A challenge to legal
sufficiency will be sustained when, among other things, the evidence
offered to establish a vital fact does not exceed a scintilla.[12]
Id. at 810. In addition, so long as the evidence falls within the
zone of reasonable disagreement, we may not invade the fact-finding
role of the jurors, who alone determine the credibility of witnesses,
the weight to be given their testimony, and whether to accept or
reject all or a part of their testimony. City of Keller, 168 S.W.3d
at 822.

 In reviewing a factual sufficiency challenge, we consider all
the evidence and set aside a finding only if it is so against the
great weight and preponderance of the evidence as to be clearly wrong
or unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). If, as
here, the appellant is challenging the factual sufficiency of the
evidence to support a finding on an issue on which the other party had
the burden of proof, we must overrule the complaint unless,
considering all the evidence, the finding is clearly wrong and
manifestly unjust. See Santa Fe Petroleum, L.L.C. v. Star Canyon
Corp., 156 S.W.3d 630, 637 (Tex.App.--Tyler 2004, no pet.) (citing
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)). Inferences may
support a judgment only if they are reasonable in light of all the
evidence, id., and, again, the trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given their
testimony. GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet, 61 S.W.3d
599, 615-16 (Tex.App.--Houston [14th Dist.] 2001, pet. denied).

 General Damages--Defamation

 Compensatory damages allowable for defamation are divided into
two categories: general and special. Pershak, 13 S.W.3d at 427.
General damages include mental anguish, loss of reputation, and like
damages that naturally flow from the defamation and are not easily
susceptible to monetary valuation. Id. General damages are those
conclusively presumed to have been foreseen by the defamer as a
necessary and usual result of his or her wrongful act. Fox v. Parker,
98 S.W.3d 713, 726 (Tex.App.--Waco 2003, pet. denied) (citing Arthur
Anderson & Co. v. Parker Equip. Co., 945 S.W.2d 812, 816 (Tex. 1997)).
 As noted earlier, Variyam chose not to seek "special" damages, i.e.,
damages which must be specifically stated and proved, such as loss of
earning capacity, which are foreseeable to the defendant but are not
the necessary and usual result of the wrong. Id.

 Because Hancock's statements were determined by the trial court
to be defamatory per se, Variyam is entitled to recover general
damages without proof of other injury. Leyendecker, 683 S.W.2d at
374. "The law presumes a statement which is libelous per se defames a
person, injures his reputation"; id., and causes mental anguish.
Ryder Truck Rentals, Inc. v. Latham, 593 S.W.2d 334, 337 (Tex.Civ.App.-
-El Paso 1979, writ ref'd n.r.e.) (general damages for injury to
character, reputation, feelings, mental suffering or anguish, or other
wrongs not susceptible to monetary valuation are presumed); Peshak, 13
S.W.3d at 427 ("In actions of libel per se, the law presumes the
existence of some actual damages, requiring no independent proof of
general damages.") Because the damages are presumed, "there need be
no inquiry in the [jury] charge about whether there was a defamation
or about 'proximate cause' and injury (or the jury may be instructed
to so find.”) Fox, 98 S.W.3d at 726.

 Further, because the damages are purely personal and cannot be
measured by any fixed rule or standard, the amount of general damages
suffered in a defamation case is difficult to determine. First State
Bank of Corpus Christi v. Ake, 606 S.W.2d 696, 702 (Tex.Civ.App.--
Corpus Christi 1980, writ ref'd n.r.e.) (citing Bayoud v. Sigler, 555
S.W.2d 913 (Tex.Civ.App.--Beaumont 1977, writ dis'md)). Thus, because
of their uncertain nature, their measurement is generally left to the
discretion of the finder of fact, subject only to a determination that
the award was clearly excessive or the result of "passion, prejudice,
or other improper influences." See Morrill, 226 S.W.3d at 550 (citing
Bolling, 671 S.W.2d at 549). See also Tranum v. Broadway, 283 S.W.3d
403, 422 (Tex.App.--Waco 2008, pet. denied).

 Mental Anguish

 An award of mental anguish damages will survive a legal
sufficiency challenge when the plaintiff has introduced (1) "direct
evidence of the nature, duration, or severity of [plaintiff's]
anguish, thus establishing a substantial disruption in the plaintiff's
daily routine"; or (2) other evidence of "a high degree of mental pain
and distress that is more than mere worry, anxiety, vexation,
embarrassment, or anger." Parkway Co. v. Woodruff, 901 S.W.2d 434,
444 (Tex. 1995). Direct evidence may be in the form of the parties'
own testimony, that of third parties, or experts. Id. "There must
also be some evidence to justify the amount awarded"; Saenz v. Fid. &
Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996), and the
amount awarded must be fair and reasonable. Id.

 Hancock relies on two cases in asserting that Variyam's
testimony portrays nothing more than common anxiety, embarrassment and
anger. See Parkway Co., 901 S.W.2d at 444; Exxon Mobil Corp., 252
S.W.3d at 505. In Parkway, the Texas Supreme Court found plaintiff's
proof of damages for mental anguish lacking where he addressed his
mental state in only two passages of testimony saying he "was hot" and
"was very disturbed about that." Parkway, 901 S.W.2d at 444. His
wife testified that "[their] life changed," "just upsetting," "her
husband was very quiet," and she was "just upset it changed their
lifestyle." Id. The Exxon Mobil Court found plaintiff's proof of
damages for mental anguish lacking where the plaintiff testified that
he found being terminated from his employment "devastating," "life
changing," and "horrible." Exxon Mobil Corp., 252 S.W.3d at 505. His
wife testified that her husband was "devastated" when he had to tell
his children that he lost his job. Id. A co-worker of the plaintiff
also testified that, when plaintiff was told of his termination, he
was "devastated," reacted with an "emotional outburst," was in a
"state of disbelief and shock," "extremely upset," and "could not
sleep that night." Id. (emphasis added).

 Here, Variyam testified to mental anguish that substantially
affected his mental state at home and at work. He testified that he
was devastated, very distraught, and disappointed. The defamation
disrupted his family and distracted him at home. He acted differently
at home and was more introspective---spending time looking at the
information. He considered moving his family from Lubbock. Work was
also disrupted and stressful. He was distracted, uncomfortable
returning to work, embarrassed when he saw his colleagues, and
paranoid that people might be talking behind his back. He still
thinks about the defamatory statements---the accusations "are still
stuck in his mind." He fears that others who saw the letter will
communicate the statements further, worries how the letter will affect
his future ability to practice medicine, fears how the communication
to ACGME will affect him in the future practice of his profession, and
continues to suffer from sleeplessness. Because of Hancock's
statements, he testified he has suffered emotional difficulties and
has seen "an institutional person who has supported [him]."

 We agree with Variyam that his circumstances are more like the
plaintiff's circumstances in Bentley where the Texas Supreme Court
held that the plaintiff satisfied his burden of proof in proving
mental anguish. In Bentley, the plaintiff testified at trial that the
defamation cost him time, deprived him of sleep, embarrassed him in
the community, disrupted his family life, distressed his children at
school, depressed him, impugned his honor and integrity, was the worst
experience in his life and caused his family to suffer. Bentley, 94
S.W.3d at 606.

 Having reviewed all the evidence, we find that the record in
this case does not indicate that the jury's award of past and future
mental anguish damages in the amount of $30,000 is either excessive,
or the result of passion, prejudice, or other improper influence. The
amount was within the jury's discretion and we will not substitute our
judgment for that of the jury. See Peshak, 13 S.W.3d at 427 ("amount
of general damages is very difficult to determine, and the jury is
given wide discretion in its estimation of them"). Accordingly, we
find Variyam's evidence is legally and factually sufficient to support
the jury's determination that $30,000 is "fair and reasonable"
compensation for past and future mental anguish Variyam suffered
because of Hancock's libel per se.

 Loss of Reputation

 In support of his contention that the evidence supporting
Variyam's award for past and future injury to his reputation, $60,000,
is legally and factually insufficient, Hancock again cites Exxon Mobil
Corp., supra. Hancock asserts that, although Variyam felt paranoid,
there is no evidence his colleagues believed Hancock's statements and
Dr. Wesson, who demoted Variyam, did not receive Hancock's letter and
had no opinion about Variyam's reputation for truthfulness.

 Because the trial court correctly determined that Hancock's
statements were libel per se, "the law presumes that [Variyam's]
reputation has been injured thereby." Leyendecker, 683 S.W.2d at 374;
see Mustang Athletic Corp. v. Monroe, 137 S.W.3d 336, 339 (Tex.App.--
Beaumont 2004, no pet.); ("In Leyendecker and Bentley, the Supreme
Court of Texas held statements which are defamatory per se entitle a
plaintiff, as a matter of law, to recover actual damages for injury to
reputation."); Peshak, 13 S.W.3d at 427 ("In actions of libel per se,
the law presumes the existence of some actual damages, requiring no
independent proof of general damages."); Ryder Truck Rentals, Inc.,
593 S.W.2d at 337 (defamation per se entitles a plaintiff to presumed
general damages for injury to character, reputation, feelings, mental
suffering or anguish, and other wrongs not susceptible to monetary
valuation). As such, Variyam was not required to present independent
evidence that his reputation was harmed or that his colleagues
believed Hancock's statements. Peshak, 13 S.W.3d at 427.[13] That
said, having reviewed the entire record, there is sufficient evidence
from which the jury could have inferred that Variyam's demotion from
his position as Chief of the Gastroenterology Division and ACGME's
denial of his application to reinstate the Fellowship Program were
due, at least in part, to the statements in Hancock's letter which was
published only weeks before these events took place.

 Furthermore, contrary to Hancock's argument that Dr. Wesson
did not receive Hancock's letter and had no opinion about Variyam's
reputation for truthfulness, the record indicates that Dr. Wesson
testified that he did "not remember receiving the letter" although he
"remembered the issues." Further, in addition to being listed as a
recipient of Hancock's letter on its second page, Dr. Wesson appeared
very familiar with the letter's contents in subsequent e-mails between
Dr. Wesson, Variyam, and other Texas Tech officials in January 2006
and testified that he recalled consulting with Variyam on Hancock's
letter and its potential harm to the application for
reinstatement.[14] Although Dr. Wesson may not have had an opinion on
Variyam's reputation for truthfulness, he testified that, from his
personal interactions with Variyam, he found Variyam to be a truthful
person and disagreed with Hancock's statements that Variyam had a
"reputation for lack of veracity," "deals in half truths," and his
"ethical behavior should be challenged." He indicated that anyone
from the University Medical Center, Physician Network Services or any
physician who complained of having personality issues with Variyam
never complained that Variyam was untruthful or dishonest.

 Hancock's citation to Exxon Mobil Corp., supra, is also
unavailing. The portions of Exxon Mobil Corp. cited by Hancock were
relevant only to the Exxon Mobil Court's analysis of whether there was
sufficient evidence to support the plaintiff's award of damages for
mental anguish, not injury to reputation. Exxon Mobil Corp., 252
S.W.3d at 505 n.10. Moreover, Hancock fails to cite a single case in
support of his assertion that, where libel per se is found by the
trial court, the plaintiff must present independent evidence of injury
to his or her reputation.

 Accordingly, we find the evidence is legally and factually
sufficient to support the jury's award of $60,000 in damages for past
and future injury to Variyam's reputation as a result of Hancock's
letter.

 Causation--Self-Publication

 Hancock next asserts that, because Variyam self-published
Hancock's statements a week after Hancock published the
statements,[15] Variyam can recover no damages because he suffered no
harm or the trial court should have issued a charge that sought a jury
determination of proportionate fault, i.e., did Variyam cause some of
his damages due to self-publication. In support he cites the cases of
Doe v. SmithKline Beecham Corp., 855 S.W.2d 248 (Tex.App.--Austin
1993), aff'd as modified, 903 S.W.2d 347 (Tex. 1995) and Glenn v.
Gidel, 496 S.W.2d 692, 698 (Tex.Civ.App.--Amarillo 1973, no writ).

 In Doe, an employment applicant, Doe, asserted that SmithKline
libeled or slandered her by placing her in a situation in which she
felt obligated to disclose to other prospective employers the
circumstances of a drug test and the revocation of SmithKline's offer
of employment. Doe, 855 S.W.2d at 259-260. She did not allege that
SmithKline published the defamatory statement. Id. The Doe Court
affirmed summary judgment in favor of the defendant on the defamation
claim because there was no indication that Doe was compelled by law or
other authority to report the alleged defamatory statement made by
SmithKline. Id. at 259. In so doing, the Doe Court relied on the
rule of law espoused in Lyle v. Waddle, 144 Tex. 90, 188 S.W.2d 770
(Tex. 1944), that "if the publication of which plaintiff complains was
consented to, authorized, invited or procured by plaintiff, he cannot
recover for injuries sustained by reason of the publication." Id. at
772.

 Here, the circumstances are quite dissimilar. First, the trial
court determined that Hancock's statements represented libel per se.
Hence, there was no need to show Hancock's statements proximately
caused the injury to Variyam's reputation or mental anguish. See Fox,
98 S.W.3d at 726. Secondly, the jury was specifically asked to limit
his damages to those damages "caused by the January 2, 2006 letter"
from Hancock to Variyam's superiors and ACGME. Finally, there was no
evidence at trial that Variyam "consented to, authorized, invited or
procured" Hancock's publication.

 Neither does Glenn v. Gidel, supra, have any application here.
On appeal it was determined that the trial court properly instructed a
verdict favorable to all defendants where the record was devoid of any
evidence that the alleged defamatory statement was overheard or
communicated to a third party. Glenn, 496 S.W.2d at 698. In the
absence of evidence of publication, the Glenn Court held the alleged
defamation is not actionable citing the rule in Lyle, supra. Here,
there was ample evidence of the publication of Hancock's letter before
Variyam sought a retraction.[16]

 To resolve what Hancock asserts to be equal inferences that
Variyam's injury resulted from his own self-publication rather than
Hancock's publication, he asserts the trial court should have issued a
jury instruction which proportioned fault between Variyam and Hancock,
i.e., asked the jury whether Variyam's injuries were caused by
Hancock's publication or Variyam's publication. A party objecting to
a charge must point out distinctly the objectionable matter and the
grounds of the objection to the trial court. See Wilgus v. Bond, 730
S.W.2d 670, 672 (Tex. 1990). Here, the trial court was given no
opportunity to correct the error Hancock now asserts. Hancock failed
to state such an objection clearly designating the error and
explaining the grounds for the complaint. See Wilgus, 730 S.W.2d at
672. As a result, any complaint as to a question, definition, or
instruction, on account of the alleged defect or omission concerning
submission of the issue to the jury was waived. See Tex. R. Civ. P.
275; Kirkpatrick v. Memorial Hosp., 862 S.W.2d 762, 769 (Tex.App.--
Dallas 1993, writ denied); Borden, Inc. v. Rios, 850 S.W.2d 821, 826
(Tex.App.--Corpus Christi 1993, no writ).

 Exemplary Damages

 In reviewing whether an exemplary damages award is
constitutional, we consider three "guideposts": (1) the nature of the
defendant's conduct, (2) the ratio between exemplary and compensatory
damages, and (3) the size of civil penalties in comparable cases.
Tony Gullo Motors I. L.P. v. Chapa, 212 S.W.3d 299, 308 (Tex. 2006)
(citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418,
123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). The reprehensibility of
Hancock's conduct (the most important of these guideposts); id.
(quoting BMW of North America, Inc. v. Gore, 517 U.S. 559, 575, 116
S.Ct. 1589, 134 L.Ed.2d 809 (1996)), depends in turn on five more
factors, i.e., whether Hancock's conduct (1) caused physical rather
than economic harm, (2) threatened the health or safety of others, (3)
threatened someone who had financial vulnerability (4) involved
repeated action rather than an isolated incident, and (5) the harm
resulted from intentional malice, trickery, or deceit as opposed to
mere accident. Bennett v. Reynolds, 315 S.W.3d 867, 874 (Tex. 2010)
(citing State Farm, 538 U.S. at 419).[17]

 We find that the exemplary damages awarded to Variyam were not
excessive because the ratio of general damages to exemplary damages
was less than 1 to 1; see Bennett, 315 S.W.3d at 877 ("an award of
more than four times the amount of compensatory damages might be close
to the line of constitutional impropriety") (quoting State Farm, 538
U.S. at 425), and we have two Bennett factors present that establish
the reprehensibility of Hancock's conduct, i.e., his defamatory
statements were sent to multiple recipients, and his conduct was the
result of intentional malice. Compare Tony Gullo Motors I. L.P., 212
S.W.3d at 308-09 (exemplary damages push the constitutional limits
where the ratio between general/economic and exemplary damages is 4.33
to 1 and only one factor of five factors analyzed in BMW of North
America, Inc., 517 U.S. 559, is present).

 Hancock's wrongful conduct involved the simultaneous publication
of his defamatory statements to two of Variyam's superiors, a
colleague and ACGME. His conduct was also "the result of intentional
malice rather than mere accident." Bennett, 315 S.W.3d at 878.
Hancock testified at trial that he wrote the letter when he was
extremely angry about his dispute with Variyam related to patient
transfers. He knew the status of the ACGME application and was aware
that his letter would be seen by people at ACGME including physicians
from across the country. His letter violated the established protocol
at Texas Tech for communication with ACGME[18] and he was aware his
statements that Variyam had "a reputation for lack of truthfulness"
could have a "very, very serious effect on [Variyam's] character." If
the letters were not true, as subsequently found by the jury, he
testified he was "basically assassinating Variyam's character." From
this evidence, the jury could infer that Hancock not only intended to
injure Variyam's prospects with his present employer, Texas Tech, but
possible future prospects of employment by sending the letter to
ACGME, an independent organization that accredits all institutions
where medical training takes place nationwide.[19]

 In addition, the exemplary damages award is comparable in size
to other defamation cases. See Clark, 248 S.W.3d at 427 (jury awarded
$100,000 in exemplary damages each against two defendants for libel
per se); Bunton v. Bentley, 176 S.W.3d 21, 23 (Tex.App.--Tyler 2005,
pet. denied), cert. denied, 547 U.S. 1013, 126 S.Ct. 1476, 164 L.Ed.2d
266 (2006) ($1,000,000 exemplary damages award reasonable in
defamation case); Bradbury, 788 S.W.2d at 39 ($50,000 punitive damages
award in libel per se case not excessive); Bolling, 671 S.W.2d at 572
($60,000 punitive damages award in slander per se case not excessive).
 Accordingly, issue two is overruled.

 Issue Three - Anonymous Letter

 Hancock next asserts the trial court erred in admitting
testimony of the existence of an anonymous letter mailed nearly two
weeks after Hancock's January 2nd letter that complained to ACGME
about the Fellowship Program. Hancock asserts the testimony was
irrelevant; see Tex. R. Evid. 402, and the original writing was
required to prove the content of the anonymous letter. See Tex. R.
Evid. 1002.

 Evidentiary rulings admitting or excluding evidence are
committed to the trial court's sound discretion; Bay Area Healthcare
Group, LTD. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007); American
Protection Ins. Co. v. Johnson, 171 S.W.3d 921, 923 (Tex.App.--
Amarillo 2005, no pet.), and, even if a trial court errs by improperly
admitting evidence, reversal is warranted only if the error probably
caused the rendition of an improper judgment. See Tex. R. App. P.
44.1; Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998). Further, we review the entire record and require the
complaining party to demonstrate that the judgment turns on the
particular evidence admitted. Bay Area Healthcare Group, LTD., 239
S.W.3d at 234. See Allen v. Creditwatch Services, LLC, 236 S.W.3d
315, 324 (Tex.App.--Corpus Christi 2007, pet. denied ) ("complaining
party must usually show that the whole case turned on the evidence at
issue").

 Hancock asserts the trial court should have excluded any and all
evidence of the anonymous letter sent to ACGME.[20] At trial, Variyam
acknowledged, when testifying about the continuing process related to
the ACGME reinstatement application, that ACGME had received a letter
"from an anonymous source" and he wrote a letter "basically
[responding] to the anonymous complaints" received by ACGME against
Drs. Farooq and Parupudi. Variyam's letter to ACGME, admitted as an
exhibit, referenced an "unnamed complainant" and summarized the
anonymous complaints made against Drs. Farooq and Parupudi in a single
paragraph. The remainder of Variyam's five-page letter addressed the
qualifications and actions of Drs. Farooq and Parupudi, and Variyam's
efforts to assure ACGME that the Fellowship Program had sufficient key
clinical faculty to maintain the program. In the second to last
paragraph, the letter stated that "[w]e suspect that the complaint
came from a disgruntled person who has some, but incomplete knowledge
of our division." Dr. Hancock's name was not mentioned in connection
with Variyam's testimony regarding the anonymous letter sent to ACGME.

 Without specifically stating how the case, or any material
issue, turned on this particular evidence, Hancock simply asserts that
this testimony caused the rendition of an improper judgment because
the jury was permitted to speculate whether Hancock authored the
anonymous letter. Because Hancock's statements in his January 2nd
letter were found by the trial court to be libel per se, the anonymous
letter was wholly irrelevant to the issue of whether Hancock's prior
letter defamed Variyam. See Allen, 236 S.W.3d at 324. Furthermore,
Variyam's responsive letter indicates that the anonymous complainant
was someone other than Hancock who, from the record, appeared to have
complete knowledge of the Gastroenterology Division. Accordingly, we
find that, even if the trial court erred in admitting evidence of the
anonymous letter, any error was harmless. See Shearson Lehman, 806
S.W.2d at 927 (admission of anonymous letter harmless error in
defamation case where letter did not refer to a matter dispositive of
the case and did not establish that the defendant was attempting to
damage the plaintiff's reputation). Hancock's third issue is
overruled.

 Conclusion

 The trial court’s judgment is affirmed.

 Patrick A. Pirtle
 Justice
Quinn, C.J., not participating.

-----------------------
[1]For purposes of disclosure, we note that Justice Hancock is not
related to Appellant.

[2]At all times relevant to this case, Hancock knew that ACGME was an
independent organization that accredits institutions where medical
training takes place nationwide. When Hancock wrote his letter, he
was aware that an application for reinstatement of Texas Tech's
Gastroenterology Fellowship was pending with ACGME and that Texas Tech
and ACGME were scheduled to meet toward the end of January 2006 to
decide the fate of Texas Tech's Fellowship Program of which Variyam
was the Program Director. Hancock was also aware that the letter
would be received by ACGME's Residency Review Committee, a committee
comprised of physicians who were national experts in the field of
gastroenterology or internal medicine. In addition to Hancock's
letter, ACGME received an anonymous letter dated January 19
complaining about two doctors, Farooq and Parupudi, participants in
the gastroenterology training program.

[3]From the Charge of the Court, question 1 addressed the statement
"reputation for lack of veracity"; whereas, question 2 addressed the
statement "deals in half truths, which is legally the same as a lie."

[4]The jury awarded Variyam $30,000 for loss of reputation in the
past, $30,000 for future loss of reputation, $15,000 for past mental
anguish and $15,000 for future mental anguish.

[5]Libel is defined by statute as "defamation expressed in written or
other graphic form that tends to . . . injure a living person's
reputation and thereby expose the person to . . . financial injury or
to impeach any person's honesty, integrity, virtue, or reputation . .
. ." Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2005). Although
slander is not statutorily defined, at common law a slanderous
statement is one that is orally communicated or published to a third
person without legal excuse. Randall's Food Markets v. Johnson, 891
S.W.2d 640, 646 (Tex. 1995).

[6]Hancock does not challenge whether the evidence was sufficient to
establish that his statements were false, published, or made with
malice.

[7]"There can be no doubt that, at common law, to publish of a person
in writing that he was mendacious, or that he had uttered a falsehood,
was libelous per se." Fleming, 114 S.W. at 652. "Such a publication
is a direct impeachment of the honesty and integrity of the person
against whom it is directed, and its tendency necessarily is to injure
him by exposing him to public hatred and contempt." Id.

[8]If Hancock's statements were constitutionally protected opinion
speech, his statements would not be actionable. See Pisharodi v.
Barrash, 116 S.W.3d 858, 862 (Tex.App.--Corpus Christi 2003, pet.
denied).

[9]In Milkovich, the United States Supreme Court stated as follows:

 If a speaker says, "In my opinion John Jones is a liar," he
 implies knowledge of facts which lead to the conclusion that
 Jones told an untruth. Even if the speaker states the facts upon
 which he bases his opinion, if those facts are either incorrect
 or incomplete, or if his assessment of them is erroneous, the
 statement may still imply a false assertion of fact. Simply
 couching such statements in terms of opinion does not dispel
 these implications; and the statement, "In my opinion Jones is a
 liar," can cause as much damage to reputation as the statement,
 "Jones is a liar." As Judge Friendly aptly stated: "[It] would
 be destructive of the law of libel if a writer could escape
 liability for accusations of [defamatory conduct] simply by
 using, explicitly or implicitly, the words 'I think.'" See
 Cianci v. New Times Publishing Co., 639 F.2d 54, 64 (2d Cir.
 1980).

Milkovich, 497 U.S. at 18-19.

[10]Other courts have not found the term "dealing" ambiguous or
troubling in the defamation context. For example, see Bradbury, 788
S.W.2d at 38 (letters that accused employee of "a lack of fidelity and
honesty in her dealings with her employer" were actionable per se);
Butler v. Central Bank & Trust Co., 458 S.W.2d 510, 514 (Tex.Civ.App.--
Dallas 1970, writ dism'd) ("[t]o charge an employee with dishonesty in
his dealing with his employer" is actionable per se).

[11]“In general, oral words, however opprobrious, are not actionable
without proof of specific damages, unless they impute to another the
commission of a crime or affect a person injuriously in his office,
profession or occupation. Written or printed words charging
dishonesty, fraud, rascality, or general depravity are generally
libelous per se, but not so when spoken orally." Arant, 436 S.W.2d at
176 (quoting 36 Tex.Jur.2d, Libel and Slander, § 3, pp. 282-83).

[12]Less than a scintilla of evidence exists when the evidence is so
weak as to do no more than create a mere surmise or suspicion of fact.
 King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert.
denied, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

[13]"A third party is deemed to have understood the defamatory nature
of a statement if a reasonable person would have understood the
statement under the circumstances." In re Perry, 423 B.R. 215, 267
(Bankr. S.D. Tex. 2010) (citing Marshall Fields Stores, Inc. v.
Gardiner, 859 S.W.2d 391, 396 (Tex.App.--Houston [1st Dist.] 1993,
writ dism'd w.o.j.)). A finding that a statement is defamatory per se
subsumes the need for such a determination. See Leyendecker, 683
S.W.2d at 374.

[14]Dr. Wesson testified that the effect of Hancock's letter on the
pending reinstatement application with ACGME to reinstate the
Fellowship Program would have been negative.

[15]Hancock refers to a letter sent January 9, 2006, by Variyam to
Hancock wherein Variyam references the defamatory statements made in
Hancock's letter and requests that he make a retraction in the form of
a written letter addressed to all the recipients of Hancock's January
2nd letter. With the exception of ACGME, Variyam's letter copied only
the recipients of Hancock's letter, Dean Bernard Mittemeyer, Dr.
Donald Wesson, and Dr. David Hodges. Thus, Hancock had already
published his libelous statements to the recipients of Variyam's
letter at least a week before they received a copy of Variyam's
letter.

[16]The evidence at trial showed that, in addition to the addressees
of Hancock's letter, some form of publication of the letter's contents
was made to Dr. Eugene Dabezies, then Chairman of the Orthopedic
Surgery Department at Texas Tech. He testified at trial that he heard
of a controversy in the Gastroenterology Department involving an
allegation that Variyam had a reputation for not being truthful, but
it didn't make sense to him. To the contrary, Dr. Dabezies testified
at trial that Variyam "was a truthful person," "well respected in the
medical community as a person to take care of patients" and "a
scholar."

[17]Because we have determined Variyam is entitled to recover damages
for injury to reputation and mental anguish, we need not consider
Hancock's argument that Variyam is entitled to no exemplary damages
because he did not recover actual damages. Under Texas law,
generally, the recovery of actual damages is a prerequisite to the
receipt of exemplary damages. Nabours v. Longview Savings & Loan
Association, 700 S.W.2d 901, 903 (Tex. 1985).

[18]Dr. Surendra Varma, Associate Dean for Graduate Medical Education
and Chair of the Graduate Medical Education Committee at Texas Tech,
testified that it was inappropriate for anyone to communicate directly
with ACGME unless they were the Program Director, Variyam, or the
Designated Information Officer, Jim Watters. In addition, he
testified it was an ACGME requirement that all correspondence with
ACGME go through the Graduate Medical Education Committee.

[19]The fact that Hancock unnecessarily mailed an additional copy of
the letter to ACGME reflects a malicious intent. Leyendecker, 683
S.W.2d at 375.

[20]We note that record references to an anonymous letter represented
isolated statements contained in four pages out of over five hundred
thirty pages of testimony over a three day trial. Further, Variyam's
counsel did not mention the anonymous letter in either his opening or
closing statements.