Bob H. MUSSER, Individually and
d/b/a Musser & Associates,
Petitioner,

v.

SMITH PROTECTIVE SERVICES,
INC., et al., Respondents.

No. C–4216.

Supreme Court of Texas.

Jan. 14, 1987.

Rehearing Denied Feb. 25, 1987.

Michael C. Neel and Candace Sturdivant, Michael C. Neel & Associates, Houston, for petitioner.

Thomas P. Sartwelle and Roger Townsent, Fulbright & Jaworski, Houston, for respondents.

SPEARS, Justice.

This is a libel action concerning a written statement by Smith about Musser's business practices. The jury found the statement was libelous and was made with malice and awarded Musser compensatory damages of $15,000 and exemplary damages of $35,000. The trial court rendered judgment for Musser that the statement was libelous, but granted judgment notwithstanding the verdict for Smith on the malice and exemplary damages findings. The court of appeals reversed the trial court's judgment that the statement was libelous. 690 S.W.2d 56. We affirm the judgment of the court of appeals.

In an attempt to attract a client whom his security and polygraph testing firm previously served, Andrew Smith wrote the following letter to Charles Yust in July of 1976:

Dear Mr. Yust:

Thank you for the time you spent with me over the telephone this morning allowing me the opportunity to explain the services of our guard division, investigative division and our polygraph division, Truth Verification. Under the name Truth Verification, Inc. which was in the years past a separate corporation, we started commercial polygraph in the

State of Texas in the early 1950s. We opened up the first commercial polygraph office in Houston in the late 1950s. With offices in Dallas, Fort Worth, San Antonio and Houston, we have pioneered commercial polygraph here in the State of Texas for the last 25 years.

I was certainly glad to hear that you are the security director of Sterling Electronics. In years past, our good competitor, Mr. Bob Musser, acted as the Sterling Electronics security director and although he did ocassionally refer us undercover and investigative business, we were, for all practical purposes, "wired-out" when it came to any polygraph services.

As I mentioned over the telephone, because of the fine job we did in training Mr. Bob Musser, we can vouch for his competence. He is a fine polygraph examiner and a very strong competitor. Originally, Sterling Electronics was a Truth Verification client. When Mr. Musser left us, he was able, as so many of our ex-employees have in the past, to relieve us of certain of our polygraph accounts. The two major accounts that he took were Sterling Electronics and Finger Furniture Company. When I originally spoke to Mr. Allen Finger, he was very pessimistic about the prospects of making a change. Two years ago, he told me that he would give me ten minutes of his time to explain our polygraph services after months of relentless attempts on my part to secure an appointment.

Today, we handle their polygraph requirements, their investigation requirements and they have [a] proposal from us under consideration to handle all of their security guard requirements. At this time, all I would ask is some of your time to make a presentation of our polygraph services. In terms of quality, special service, convenience and economy, I am confident that I can demonstrate our unequivocal superiority. I will be back

in touch with you on Monday September 6, 1976. I would ask that you please give me a few minutes of your time. Until then, I will remain,

Very truly yours,
Andrew L. Smith

At the time of the letter's publication, Yust was personnel director for Sterling Electronics. Smith was vice-president of Smith Protective Services, Inc., which was formerly Truth Verification, Inc. Truth Verification, Inc., had employed Musser from March to December in 1962. In May of 1964, Musser formed his own investigating company named Musser & Associates. Sterling Electronics was under contract with Musser for polygraph testing of Sterling's employees and potential employees when Smith wrote the letter to Yust.

On the basis of the statements Smith made in the letter addressed to Yust, Musser sued Smith and Smith Protective Services, Inc. The trial court determined Smith's letter was capable of a defamatory meaning and submitted special issues to the jury. The jury answered that the statement "[w]hen Mr. Musser left us, he was able, as so many of our ex-employees have in the past, to relieve us of certain of our polygraph accounts" was libelous and made with malice. The trial court disregarded the malice findings. Smith and Musser both appealed. The court of appeals reversed the trial court's judgment, holding as a matter of law the statement was not reasonably capable of a defamatory meaning in the mind of an ordinary reader. On appeal to this court, Musser argues that Smith's remark was reasonably capable of a defamatory meaning and that the jury's findings of libel and malice should be upheld.

▪ The law in the area of libel is well settled. In trying a libel action, the initial question for determination is a question of law to be decided by the trial court: were the words used reasonably capable of a defamatory meaning.[1] *Beaumont Enter-*

1. While recognizing the correct rule in its first paragraph, the dissenting opinion proceeds to disregard the rule. Whether the words used are

*prise & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex.1985); *Taylor v. Houston Chronicle Publishing Co.,* 473 S.W.2d 550, 554 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). The court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Fitzjarrald v. Panhandle Publishing Co.,* 149 Tex. 87, 228 S.W.2d 499, 504 (1950). Only when the court determines the language is ambiguous or of doubtful import should the jury then determine the statement's meaning and the effect the statement's publication has on an ordinary reader. *Smith,* 687 S.W.2d at 730; *Gartman v. Hedgpeth,* 138 Tex. 73, 157 S.W.2d 139, 141 (1941). The threshold question then, which is a question of law, is whether Smith's statements are reasonably capable of a defamatory meaning.

■ Smith's letter praises Musser's qualifications and competence. Smith also writes that Musser was "able, as so many of our ex-employees have in the past, to relieve us of certain polygraph accounts." This language, when read with the letter as a whole, is not ambiguous or of doubtful import. While "relieve us of certain accounts" is sarcastic and may perhaps be twisted or stretched to imply that Musser was unethical in his departing relationship with Smith, the language is not ambiguous to an ordinary reader. Mr. Yust, to whom the letter was addressed, and Mr. Robert Yuna, a vice-president of Sterling Electronics, testified that Smith's statement seemed to cause doubts regarding Musser's integrity and implied that Musser would steal customer lists. The reactions of Yust and Yuna, however, are not typical of the meaning an ordinary reader would impute to the statement. As the court of appeals said:

> We fail to see how the statement complained of is defamatory. It calls plaintiff a strong and successful competitor. In our free enterprise system competition is expected, not unethical. The

statement does not charge plaintiff with the commission of a crime or the violation of any law. It does not accuse him of violating any kind of contract, such as a covenant against competition. In our opinion by no stretch of the imagination does it charge him with any unethical acts and business dealings. It accuses him of absolutely nothing except what he had a right to do, that is, to compete with Smith for business including business from customers of Smith.

690 S.W.2d at 58.

Based upon a review of the letter as a whole in light of the circumstances in which it was written, Smith's words are not reasonably capable of a defamatory meaning. As a matter of law, then, the statement was not libelous or defamatory. It was improper, therefore, for the trial court to submit any issue to the jury regarding the alleged libelous character of the letter.

It is noteworthy that Smith's statements are basically true. While Sterling Electronics was not a client of Truth Verification during Musser's employment, testimony at trial indicated Truth Verification did train Musser; Musser was a good examiner; Truth Verification had provided service to Sterling in the past; and Sterling and Finger both retained Musser's new firm for their security business. In order for Smith's statement to be actionable, the statement must be false. TEX.CIV.PRAC. & REM. CODE ANN. § 73.005 (Vernon 1986). Finger and Sterling did retain Musser's services after Musser left Truth Verification. But even had Smith's remark been false, it certainly was not defamatory.

Although couched in a sarcastic tone, Smith's letter portrays Musser as a successful competitor. Any other construction tortures the ordinary meaning. To impute a defamatory character to Smith's letter would adversely affect spirited commercial representations regarding the relative merits of any products, services, and business dealings and opportunities.

reasonably capable of a defamatory meaning is a question of law.

Accordingly, we affirm the judgment of the court of appeals that Musser take nothing.

Dissenting opinion by ROBERTSON, J., joined by RAY and MAUZY, JJ.

ROBERTSON, Justice, dissenting.

I respectfully dissent. After first acknowledging that it is for the trial court to decide whether the words used are reasonably capable of a defamatory meaning, the majority substitutes its opinion for that of the trial judge and holds that as a matter of law they are not.

The words "took" and "relieved" are perhaps the two most important words used in the statement. Common synonyms for "take," the present tense of "took," are "cheat, bilk, ... defraud, ... flimflam, gyp." *Webster's Collegiate Thesaurus* 815 (1976). Synonyms of "relieve" include "rob, knock off, knock over, loot, plunder, ransack, rifle, stick up." *Id.* at 666. Whether the jury interpreted these words in this way is irrelevant, but it clearly establishes the ambiguous nature of the statement without considering the surrounding circumstances.

Having determined the statement to be ambiguous or of doubtful import "it is the duty of the court to give the jury a definition of what is a libel, and leave it for the jury to say whether the offense has been proved." *Cotulla v. Kerr*, 74 Tex. 89, 11 S.W. 1058, 1059 (1889). That is exactly what was done by the trial court and it is noteworthy that a unanimous jury found the statement to be libelous. Additionally, Yust and Yuna interpreted the statement as defamatory. Yet, the majority dismisses Yust and Yuna's reactions as "not typical of the meaning an ordinary reader would impute to the statement." Apparently, the majority feels that Yust, Yuna, the trial judge, twelve jurors, one court of appeals justice and three supreme court justices do not represent the "ordinary reader" while two court of appeals justices and six supreme court justices are "ordinary readers."

By mere insertion of the words "as a matter of law," the majority of this Court has substituted its judgment, regarding the threshold determination concerning the ambiguity of the statement, for that of the trial court judge. Moreover, the majority has substituted its finding for that of the jury simply because it would have reached a different conclusion. I find no authority for either of these actions by the majority. The record contains evidence to support the trial judge's finding and the jury findings. Accordingly, I would affirm the judgment of the trial court.

RAY and MAUZY, JJ., join in this dissenting opinion.