

## OPINION

No. 04-08-00725-CV

**HEARST NEWSPAPER PARTNERSHIP, L.P.**,
d/b/a San Antonio Express-News and Ron Wilson,
Appellants

v.

Manuel **MACIAS**, Jr.,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-00690
Honorable Joe F. Brown, Jr., Judge Presiding

Opinion by:　　Sandee Bryan Marion, Justice

Sitting:　　　　Catherine Stone, Chief Justice
　　　　　　　　Sandee Bryan Marion, Justice
　　　　　　　　Rebecca Simmons, Justice

Delivered and Filed:　February 18, 2009

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

In the underlying lawsuit, Manuel Macias, Jr. sued the Hearst Newspaper Partnership, L.P.,

d/b/a San Antonio Express-News, and Ron Wilson (collectively, "the newspaper"), as well as other

defendants. Macias's suit against the newspaper alleged defamation based on eight statements

contained in articles written by Ron Wilson for the San Antonio Express-News. The newspaper

moved for summary judgment on all eight statements. The trial court rendered summary judgment

in favor of the newspaper on four of the statements and denied the newspaper's motion as to the other four statements. This interlocutory appeal by the newspaper ensued.[1] Because we conclude the newspaper established the substantial truth of its articles, we reverse and render judgment in favor of the newspaper.

## BACKGROUND

Macias is the former Executive Director of the San Antonio Development Agency ("SADA") and San Antonio Affordable Housing, Inc. (SAAH"), which is a non-profit community housing organization created by SADA. Diane Gonzalez-Cibrian was SADA's chairwoman and a member of the SAAH board of commissioners. In 2006, a dispute arose between Macias and Gonzalez-Cibrian over SADA and SAAH projects. On September 12, 2006, Macias was, as he alleges in his third amended petition, "constructively terminated" from his position as Executive Director of SADA. The newspaper ran several articles about the dispute and Macias's departure. Macias sued the newspaper alleging it defamed him.

In the course of the underlying litigation, the newspaper moved for summary judgment on Macias's claims against it. The trial court rendered summary judgment in part in favor the newspaper, but denied the newspaper's summary judgment motion with regard to statements contained in four of Ron Wilson's articles for the Express-News. On appeal, the newspaper argues the trial court erred in denying its summary judgment motion because the challenged statements were substantially true, were protected by fair-report and fair-comment privileges, and were not published with actual malice. Because we conclude the newspaper carried its summary judgment burden of

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6) (Vernon 2008).

establishing the substantial truth of the challenged statements, we discuss only that basis for summary judgment.

## DISCUSSION

Libel is a defamatory statement in written form that tends to injure a living person's reputation and, as a result, exposes the person to public hatred, contempt or ridicule, or financial injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 2005). However, "[t]he truth of the statement in the publication on which the action for libel is based is a defense to the action." *Id.* § 73.005. In a summary judgment proceeding involving a media defendant in which First Amendment protections are applicable, a showing by the defendant-movant of the publication's substantial truth will defeat the non-movant's causes of action. *See McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex. 1990); *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 249 (Tex. App.—San Antonio 1996, no writ).

The test used in determining whether a publication is substantially true involves considering whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the mind of the average reader or listener, than a truthful statement would have been. *McIlvain,* 794 S.W.2d at 16. Such an evaluation involves looking to the "gist" of the publication. *Id.* If the underlying facts as to the gist of the defamatory charge are undisputed, then we may disregard any variance regarding items of secondary importance and determine substantial truth as a matter of law. *Id.*

## A.    Statement That Macias "Resigned"

In his third amended petition, Macias takes issue with the newspaper's statement, in three of the articles, that he "resigned." According to Macias, this statement was false because he did not

resign; instead, he was "constructively terminated." However, in his petition, Macias states Gonzalez-Cibrian demanded that he "execute a letter of resignation immediately." Macias then states: "The Plaintiff, an at-will employee, was induced to tender his hand-written letter of resignation during the executive session, after [he] was promised that he would continue to receive salary and full benefits until October 31, 2006, which was the effective date of his resignation. On September 12, 2006, the Plaintiff tendered his hand-written resignation with an effective date of October 31, 2006 . . . ." In his summary judgment affidavit, Macias admitted he was given the option of resigning immediately or being terminated as Executive Director, and "[t]o avoid being fired, I agreed to resign that day."

Because there is no dispute that Macias wrote what he himself characterized as a letter of resignation, we conclude the newspaper's statement that he resigned was substantially true. Also, the statement that he resigned "does not charge [Macias] with the commission of a crime or the violation of any law[, nor does it] accuse him of violating any kind of contract . . . . [B]y no stretch of the imagination does it charge him with any unethical acts and business dealings. It accuses him of absolutely nothing except what he had a right to do . . . ." *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987) (internal citation omitted). Therefore, we conclude that, in the mind of the average reader, the statement that Macias resigned was no more damaging to his reputation than a statement that he was constructively terminated.

**B.      Internal Audits and FBI Investigation**

Macias also takes issue with the following statements contained in three of the articles that he resigned in the wake of audits and an FBI investigation:

Contained in an October 4, 2006 newspaper article:

> Last month, SADA Executive Director Manuel "Manny" Macias Jr. resigned in the midst of ongoing audits by SADA and the city.

Contained in an October 6, 2006 newspaper article:

> Macias, SADA's executive director, resigned Sept. 12 after city officials began questioning the use of federal funds on his watch.

Posted to the newspaper's website on December 7, 2006:

> Manny Macias, SADA's former executive director, resigned Sept. 12 in the wake of an independent audit of his credit card use, a second audit of whether SADA used federal housing funds appropriately, and the city's plan to defund the embattled agency, whose housing contracts are being investigated by the FBI.

The "gist" of the October 4, 2006 article was that the SADA board was attempting to reassert control over SAAH and was demanding the return of $10,000 withdrawn from the SADA bank account, as well as the return of various financial documents, including credit card records, withheld by SAAH from a special audit. The article explained that auditors "were looking at a number of financial records, including use of SAAH's credit cards by Macias . . . ." The article also mentioned that Southwest Housing, a Dallas developer involved in a SAAH project, was under investigation by the FBI.

The "gist" of the October 6, 2006 article concerned the FBI investigation, the internal audit, and the SADA board's continued attempt to obtain missing financial records. The article again stated that one of the issues to be addressed by the audit was Macias's possible misuse of credit cards. The newspaper reported that Gonzalez-Cibrian said SADA was "particularly interested in documents related to a $20 million apartment complex [SAAH] was building in partnership with Southwest Housing, a Dallas developer under investigation by the FBI in connection with contracts

in that city." The article quoted FBI Special Agent Eric Vasay as confirming "an ongoing investigation regarding contracts with SADA and outside entities." The article reported the San Antonio Deputy City Manager as stating the SADA board was informed that "the city believes any money [SAAH] has belongs to SADA and to the city, which administers federal funds that fund SADA." The article also discussed potential tampering with a computer belonging to SADA's "former executive director." Finally, the article stated Macias returned a call requesting an interview, but he could not be reached later the same day.

The "gist" of the December 7, 2006 article was that the SADA computer had been tampered with and that Macias had refused to turn over financial records. The article reported that Macias said he did not know what happened to the computer, it worked fine on his last day, and office computers frequently broke down. The article noted that records from the computer likely would have been reviewed in the course of two audits, "one dealing with financial management of the agency and the other with whether SADA properly used and reported federal housing funds administered by the city." The article reported that Gonzalez-Cibrian "pushed for an independent audit of management finances and Macias' use of credit cards," after an SADA employee sent board members a letter claiming the agency was being mismanaged.

In its summary judgment motion, the newspaper proved the truth of the facts alleged in these three articles. The newspaper submitted, as summary judgment proof, Agent Vasay's affidavit in which he confirmed "an ongoing investigation regarding contracts with SADA and outside entities." The newspaper's summary judgment evidence also included a copy of (1) a May 31, 2006 independent audit report that discussed, in part, an analysis of travel expenses and credit card usage; and (2) SADA's application for a temporary restraining order, which stated "the City notified SADA

and SAAH that the City was conducting a comprehensive financial audit of SADA, and that the City's audit request included review of all of SAAH's financial and accounting records." Also, in Macias's summary judgment response, Macias admits an independent audit was conducted and consisted of a review of SAAH's credit card and travel policies, and credit card receipts and travel expenses. As a result, we conclude the newspaper's statements in its articles that Macias resigned in the wake of audits and an FBI investigation were substantially true.

## C.    Airfare and Credit Card Charges

Finally, Macias complains of the following statement in a September 6, 2006 article: "City records show that he charged $400 for airfare for his family and failed to document $1,000 in lunches." The "gist" of this article was that the San Antonio City Council was attempting to dissolve SADA for, in part, various perceived inefficiencies. The article stated, "After an April complaint by a retiring employee, [Macias] was placed under scrutiny for allegedly misusing agency credit cards. City records show that he charged $400 for airfare for his family and failed to document $1,000 in lunches." In its summary judgment motion, the newspaper proved the truth of the facts alleged in the September 6 article. The newspaper's summary judgment evidence included a copy of an independent audit report that stated its analysis of travel expenses and credit card usage revealed a $410.90 charge for airfare for Macias's wife and "various [SADA credit card] charges in the amount of $999.81 . . . for out-of-town meals," despite a travel per diem of only $51 per day for meals. The audit stated "[b]oth per diem allowances and meal charges while on travel status should not be allowed." As a result, the newspaper's statement in its September 6, 2008 article was substantially true. Also, we note that the article reported allegations contained within "City records." "When, as here, a case involves media defendants, the defendants need only prove that third party allegations

reported in a broadcast were, in fact, made and under investigation; they need not demonstrate the allegations themselves are substantially true." *Dolcefino v. Randolph*, 19 S.W.3d 906, 918 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

**D.      Macias's Response to the Motion for Summary Judgment**[2]

In his response to the newspaper's summary judgment motion, Macias argued the gist of the articles was libelous because none of the articles mentioned an independent audit performed by Steven Porter, which exonerated Macias of any wrongdoing. Macias argued that the articles were not substantially true because they included only negative allegations and did not include any positive statements about him. As summary judgment proof, Macias submitted the affidavit of Steven Porter, whose firm conducted an audit "of limited scope" of the SAAH credit card and travel policies and travel expenses. In his affidavit, Porter states Macias properly accounted for all funds in question and discharged his duties without any indication of wrongdoing. However, a copy of the audit report was not attached to Macias's response and there is no indication in the summary judgment record that a copy of the report was available to the newspaper.

Macias's argument that the articles as a whole are defamatory is based on the theory that "the omission of material facts or misleading presentation of true facts . . . can render an account just as false as an outright misstatement." *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). However, "a plaintiff claiming defamation based on a publication as a whole must prove that the publication's 'gist' is false and defamatory and that the publication is not otherwise privileged." *Id.* We conclude that even if the Porter audit was available to the newspaper and had actually been quoted in the articles, the "gist" of the four articles would remain unchanged: Macias submitted a

---

[2] Macias did not file an appellee's brief in this appeal.

letter of resignation, audits were conducted into his credit card usage, and the FBI was conducting its own investigation of SAAH contacts.

**CONCLUSION**

We reverse that portion of the trial court's judgment denying the newspaper's motion for summary judgment and render a take-nothing summary judgment in favor of the newspaper with respect to Macias's libel claim.  The judgment is affirmed in all other respects.


Sandee Bryan Marion, Justice