

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00007-CV

JEFFERY A. BELL AND WANDA E. BELL

APPELLANTS

V.

DENBURY RESOURCES, INC., DENBURY ONSHORE, LLC, AND DENBURY HOLDINGS, INC.

APPELLEES

**AND**

### NO. 02-11-00017-CV

JEFFERY A. BELL AND WANDA E. BELL

APPELLANTS

V.

CHESAPEAKE ENERGY CORPORATION AND CHESAPEAKE OPERATING, INC.

APPELLEES

**AND**

### NO. 02-11-00018-CV

JEFFERY A. BELL AND WANDA E. BELL

APPELLANTS

V.

DICKEY PATE, JR. AND CD CONSULTING & OPERATING COMPANY

APPELLEES

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

# MEMORANDUM OPINION[1]

----------

On the court's own motion, the above causes are hereby consolidated for purposes of disposing of these related summary judgment appeals in a single opinion. Each cause shall continue to bear its respective cause number.

## I. INTRODUCTION AND BACKGROUND

Express Energy Services Operating, LP fired Appellant Jeffery A. Bell after Express received complaints from several of its customers' "company men" that they no longer wanted Bell performing sales at their well sites. Bell and his wife, Appellant Wanda E. Bell, then sued Appellees Denbury Resources, Inc.; Denbury Onshore, LLC; Denbury Holdings, Inc. (collectively Denbury); Chesapeake Energy Corporation; Chesapeake Operating, Inc. (collectively Chesapeake); Dickey Pate, Jr.; CD Consulting & Operating Company; and a slew of other individuals and entities for defamation, intentional infliction of emotional distress, civil conspiracy, gross negligence, and loss of consortium. The trial court granted summary judgment in favor of each Appellee.[2] In a single

---

[1]*See* Tex. R. App. P. 47.4.

[2]Chesapeake, as well as CD and Pate, filed both traditional and no-evidence motions for summary judgment, and Denbury filed only a traditional motion for summary judgment.

issue divided into five subissues, Appellants argue in each appeal that the trial court erred by granting the summary judgments. We will affirm the trial court's orders in all three causes.

## II. STANDARDS OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

Under the traditional summary judgment standard, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999). We must consider whether

3

reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

## III. DEFAMATION

In their first subissues, Appellants argue that the trial court erred by granting summary judgment for Appellees on Appellants' claims for defamation. To maintain a defamation cause of action, the plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998), *cert. denied*, 526 U.S. 1051 (1999).

### A. Chesapeake

Chesapeake argued in its hybrid motion for summary judgment that Appellants had no evidence that Chesapeake made a defamatory statement about Bell. Responding to that ground on appeal, Appellants argue that "Chesapeake company men had called in to Express and complained about Bell and instructed Express not to send Bell back out to their jobsites because Bell had had some problems or issues when he worked for Premiere and Frank's Casing." To support this contention, Appellants direct us to the deposition testimony of Richard Wiggins, the district manager for Express who carried out Bell's termination from Express. The following exchange occurred at Wiggins's deposition:

4

Q.    Okay.  And why did Chesapeake not want Jeff Bell on-site?

A.    The only thing that I can recall that there was a statement made is there was mistakes made by him, or issues outstanding when he worked for Premiere and also Frank's Casing, and they did not want him on the location.

Wiggins could not identify specifically who had told him this, and he did not know why Chesapeake did not want Bell at the well site because "[t]he company man didn't actually tell [Wiggins] any specific reason why he didn't want [Bell] there."

We must decide whether the words used by the unidentified Chesapeake "company man" are reasonably capable of a defamatory meaning, which is a question of law.  *See Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987); *see also Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000).  A statement is defamatory if it tends to injure the person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury, or it if tends to impeach that person's honesty, integrity, or virtue.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011) (addressing libel).  "To be defamatory, a statement should be derogatory, degrading, and somewhat shocking, and contain 'element[s] of personal disgrace.'"  *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.).  When considering whether a statement is defamatory, we construe the statement as a whole, in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive the entire statement.  *See Musser*, 723 S.W.2d at 655.

5

Here, Appellants did not—and indeed could not—identify any alleged defamatory statement made by the Chesapeake "company man" because Wiggins was not told by the "company man" why he did not want Bell at the well site. To the extent that Appellants rely on the statement made by Wiggins at his deposition as evidence that Chesapeake made a defamatory statement about Bell, the statement that there were "issues outstanding when [Bell] worked for Premiere and also Frank's Casing" is not defamatory as a matter of law because it is not reasonably capable of a defamatory meaning, construing it in light of the surrounding circumstances and based on how a person of ordinary intelligence would perceive it. Accordingly, we hold that the trial court did not err by granting summary judgment for Chesapeake on Appellants' defamation claim because there is no evidence that Chesapeake made a defamatory statement about Bell. We overrule Appellants' first subissue in cause 02-11-00017-CV.

## B.    Pate and CD

Pate and CD argued in their no-evidence motion for summary judgment that Appellants had no evidence that Pate and CD made a defamatory statement about Bell. Responding to that ground on appeal, Appellants contend the following:

> Pate contacted Express and verbally instructed and advised Express: 1) not to send Bell back out to his jobsite again and 2) the reason Pate stated that he did not want Bell on his jobsite was because Bell had made misrepresentations to three company men to make sales when Bell worked for a previous employer, Premiere, Inc.

6

To support this contention, Appellants direct us to the portion of Bell's deposition testimony in which he explained the circumstances surrounding his understanding of the alleged defamatory statements made by Pate. Bell testified that he was fired shortly after either Pate or Gary Cherry called Express and made statements to either Wiggins, Randy Davis, or Mike Byrd. However, when repeatedly questioned about the substance of the statements, Bell confirmed several times that Wiggins did not tell him what the statements were.[3] Appellants consequently failed to identify any evidence of a defamatory statement made by Pate about Bell.

Appellants additionally direct us to the "Personnel Action Form" documenting Bell's discharge, which states, "Jeff['s] salesmanship has not shown to be beneficial to Express Energy or him[]self. Several customer[s—] Quicksilver[,] Denbury[, and] Chesapeak[e—]prefer not to have him. Could be personal issues or previous employer slander issues!" This document is no evidence of a defamatory statement made by Pate of Bell, even when considered in light of the surrounding circumstances.

We hold that the trial court did not err by granting summary judgment for Pate and CD on Appellants' defamation claim because there is no evidence that Pate made a defamatory statement about Bell. We overrule Appellants' first subissue in cause 02-11-00018-CV.

---

[3]Wiggins testified in his deposition that he did not know why the "company men" did not want Bell at the well site.

7

## C.    Denbury

Denbury argued below that it was entitled to summary judgment on Appellants' defamation claim because Denbury is not vicariously liable for any alleged torts, including defamation, committed by Kendall Bennett and Michael Barton, two drilling consultants who worked with Denbury.  Denbury repeats this argument on appeal, explaining that it conclusively proved that both Bennett and Barton entered into agreements that expressly identified both as independent contractors of Denbury.

"The common law has long recognized that liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them."  *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002).  Paramount among the considerations for determining whether vicarious liability attaches is if the person being held responsible had a right to control the activities of the wrongdoer.  *Id.* at 541.  This right to control distinguishes independent contractors—who have sole control over the means and methods of the work to be accomplished—from employees.  *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998).

Control can be established in two ways:  a contractual right of control or an exercise of actual control.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).  A contract between the parties that establishes an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was subterfuge, that the hiring

8

party exercised control in a manner inconsistent with the contract provisions, or that the written contract has been modified by subsequent agreement, either express or implied. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590–92 (Tex. 1964); *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 713–14 (Tex. App.—Fort Worth 2006, no pet.); *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Here, Denbury included as part of its traditional summary judgment evidence a "Master Service Agreement" entered into between Bennett as "Contractor" and Denbury Onshore, LLC as "Company" and a "Master Service Agreement" entered into between Barton as "Contractor" and Denbury Onshore, LLC as "Company." Both agreements, which "apply to all Subsidiary and Affiliated companies of COMPANY," contain the following language:

> 15.1 In the performance of the work herein contemplated, CONTRACTOR is an independent CONTRACTOR, with the authority to control and direct the performance of the details of the work, COMPANY being interested only in the results obtained. . . .

Thus, under the terms of the unambiguous agreements, both Bennett and Barton were independent contractors of Denbury with the express right to control the performance of their own work. The burden shifted to Appellants to come forward with competent controverting evidence raising a genuine fact issue as to Denbury's right of control over Bennett and Barton. Appellants neither direct us to any evidence nor argue that Denbury exercised control over Bennett's and Barton's work in a manner inconsistent with the agreements, that the agreements were subterfuge, or that the agreements were modified in any relevant way.

9

Accordingly, Denbury conclusively established that Bennett and Barton were independent contractors of Denbury and, therefore, that it was not vicariously liable for Bennett's and Barton's alleged defamatory statements about Bell. We hold that the trial court did not err by granting Denbury summary judgment on Appellants' defamation claim, and we overrule Appellants' first subissue in cause 02-11-00007-CV.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In their second subissues, Appellants argue that the trial court erred by granting Chesapeake and Denbury summary judgment on Appellants' claims for intentional infliction of emotional distress (IIED).[4]  IIED is a gap-filler tort that has no application when the conduct at issue invades some other legally protected interest.  *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (stating that "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available" and citing with approval three defamation cases in which IIED was not available as an independent claim).  Appellants' IIED claims must fail because they are based on the same conduct as Appellants' defamation claims against Chesapeake and Denbury.  *See id.*  Appellants attempt to bypass this fatal deficiency by arguing that an IIED claim is permitted "when an employee is wrongfully terminated by an employer who is engaged in conduct 'bordering on

---

[4]Appellants do not challenge the summary judgment granted in favor of Pate and CD on this ground.

10

serious criminal acts,'" and they contend that Chesapeake and Denbury were engaged in an illegal kickback scheme. Notwithstanding that Bell was not an employee of Chesapeake or Denbury, we fail to see how evidence of an alleged kickback scheme somehow alters the fact that the gravamen of Appellants' IIED claims are the defamation claims. Evidence of an alleged kickback scheme has no relevance whatsoever to any element of Appellants' IIED claims or defamation claims. We hold that the trial court did not err by granting Chesapeake and Denbury summary judgment on Appellants' IIED claims. We overrule Appellants' second subissues in causes 02-11-00007-CV and 02-11-00017-CV.

## V. CIVIL CONSPIRACY

In their third subissues, Appellants argue that the trial court erred by granting summary judgment for Appellees on Appellants' claims for civil conspiracy. Civil conspiracy is a derivative claim because a defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Appellants pleaded that Appellees conspired to defame and slander Bell. Because the trial court properly granted summary judgment on each of Appellants' defamation claims, Appellees cannot be liable for the derivative torts of civil conspiracy with respect to those claims. *See id.* Appellants additionally contend that Appellees conspired to get Bell fired because he would not participate in an ongoing kickback scheme, but Appellants did not plead the kickback scheme as the basis of any type of independent tort or cause of action

11

that would support their derivative claims for civil conspiracy. Accordingly, we overrule Appellants' third subissues.

## VI. Gross Negligence

In their fourth subissues, Appellants argue that the trial court erred by granting summary judgment for Appellees on Appellants' claims for gross negligence. Appellants contend that "whether the underlying basis of liability against [Appellees] is defamation or intentional infliction of emotional distress, or civil conspiracy to commit same, [Appellants'] evidence directly establishes gross negligence." We have held that summary judgment was proper on Appellants' claims for defamation, IIED, and civil conspiracy. Thus, there is no evidence or "underlying basis" upon which Appellants rely to support their gross negligence claims. *See Bell v. Bennett*, Nos. 02-10-00481-CV, 02-11-00057-CV, 02-11-00063-CV, 2012 WL 858603, at *14 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (holding same). Accordingly, the trial court did not err by granting summary judgment on Appellants' claims for gross negligence. We overrule Appellants' fourth subissues.

## VII. Loss of Consortium

In their fifth subissues, Appellants argue that the trial court erred by granting summary judgment for Appellees on Wanda's claims for loss of consortium. Wanda's claims for loss of consortium are derivative of Bell's claims against Appellees. *See Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996). Because summary judgment was proper for Appellees on all of

Appellants' pleaded causes of action, Wanda's derivative loss of consortium claims likewise fail. *See id.* We overrule Appellants' fifth subissues. We overrule Appellants' only issue in each appeal.

## VIII. CONCLUSION

Having overruled Appellants' issue in each appeal, we affirm the trial court's orders in all three causes.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DELIVERED: May 17, 2012

13