

## NUMBER 13-10-00573-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ALONZO GARZA, GUADALUPE GARZA
AND BALDWIN ROOFING, INC.,**                     **Appellants,**

**v.**

**EAGLE CREEK BROADCASTING D/B/A KZTV 10,**          **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Justice Benavides**

In this case alleging defamation from the broadcast of a news story, Appellants

Alonzo Garza, Guadalupe Garza, and Baldwin Roofing, Inc. appeal the trial court's

decision to grant appellee, Eagle Creek Broadcasting d/b/a KZTV 10's ("KZTV's") motion

for summary judgment.   We affirm.

## I.   BACKGROUND

Alonzo Garza was the Chief Building Officer for the City of Corpus Christi.   In this capacity, Alonzo was responsible for inspecting buildings to ensure compliance with city code.   As part of his job, Alonzo inspected foundations (by conducting foundation excavation inspections, inspections during the placement of concrete, foundation pre-pour inspection and final building inspections), electrical wiring, mechanical issues, and plumbing.   His job duties did not, however, include roof inspections.   Residential and commercial roof inspections, according to the record, must be conducted by inspectors employed or certified by the Texas Department of Insurance.   Alonzo's brother, Guadalupe, co-owned a business named Baldwin Roofing which conducted these types of roof inspections.

On September 7, 2007, KZTV broadcast a news story about Alonzo and his brother Guadalupe.   The story, reported by KZTV reporter Andy Liscano, revealed that Alonzo had completed an "Outside Employment Form Request" for the City of Corpus Christi, requesting approval to work as a consultant and estimator for his brother Guadalupe's roofing business.   This request was approved, subject to the following stipulation:   "Ensure that you do not review any work for business in City capacity." The story also reported that Alonzo was on administrative leave while the Corpus Christi police and F.B.I. conducted an investigation on alleged bribes and payoffs to city inspectors.

Alonzo, Guadalupe, and Baldwin Roofing filed a lawsuit against KZTV alleging

2

defamation, false arrest, and whistleblower violations for the broadcast of this story. Alonzo's defamation claims focused on the following complained-of statements from the broadcast:

1. Statement One: "Action 10 news has learned that the City's Chief Building Inspector, who is on paid leave, has also been working on another job on the side with his brother's roof company."

2. Statement Two: "As Action 10 news searches deeper into alleged misconduct among city inspectors, we are discovering links."

3. Statement Three: "Alonzo Garza has been on leave two weeks due to the police and FBI investigation into alleged bribe and payoffs among City inspectors."

4. Statement Four: "Skip Noe [the City of Corpus Christi's former City Manager] has said that approval of Alonzo Garza's outside employment for his brother's company was close to crossing the line."

5. Statement Five: Skip Noe stating that Alonzo's outside employment "did put the onus on Mr. Alonzo Garza to be careful that indeed he was not crossing the line where he would be inspecting his own work."

6. Statement Six: "If Alonzo Garza had to be careful not to cross the line by inspecting his own work, what about the other inspectors who reported to him and inspected work done by his brother's company? Did they feel pressure to approve work done by Baldwin Roofing?"

KZTV filed no-evidence and traditional motions for summary judgment, asserting the following grounds for relief: (1) that the reporting regarding the investigation was literally or substantially true; (2) that the complained-of statements were privileged; (3) that Alonzo, Guadalupe, and Baldwin Roofing were public figures and could not recover without establishing by clear and convincing evidence that KZTV acted with actual malice; (4) that the complained-of statements were not capable of a defamatory

3

meaning; (5) that there was no evidence of malice; and (6) that there was no evidence of damages.    KZTV attached the following exhibits to prove their motion:

Exhibit A:    The transcript and CD of the broadcast that aired September 7, 2007

Exhibit B:    Form 82, Outside Employment Request Form

Exhibit C:    Excerpts from the 1,277 pages, seven (7) volumes of the Corpus Christi Police Department's records on the investigation of possible alleged bribes among city inspectors

Exhibit D:    Information and Complaint in Cause Number 09-CR-1702-3

Exhibit E:    Information and Complaint in Cause Number 09-CR-1864-3

Exhibit F:    Plaintiffs' First Original Petition

Exhibit G:    Mission of the City of Corpus Christi Building Inspection Division

Exhibit H:    Corpus Christi Caller Times article dated August 28, 2007

Exhibit I:    *NW Communications of Tex., Inc. v. Power*, No. 05-99-01641-CV, 2000 WL 1036327 (Tex. App.—Dallas July 28, 2000, pet. denied) (mem. op.).

Exhibit J:    Excerpts from Plaintiff Alonzo Garza's oral deposition

Exhibit K:    Excerpts from Plaintiff Guadalupe Garza's oral deposition

Exhibit L:    Excerpts from Reporter Andy Liscano's oral deposition

Exhibit M:    Affidavit of KZTV Reporter Andy Liscano

Exhibit N:    Order for Alonzo Garza's Administrative Leave for Fact Finding Investigation

Exhibit O:    Alonzo Garza's Termination of Employment

Exhibit P:    KIII news article from August 27, 2007

Exhibit Q:    Motion and Order of Dismissal of criminal cases

Exhibit R:     Affidavit of Sgt. David Gonzales, Corpus Christi Police Dept.

Exhibit S:     Affidavit of KZTV News Director Hollis Grizzard

After considering the motions, responses, affidavits, other evidence on file, and the arguments of counsel at hearing, the trial court granted the motion. This appeal ensued.

## II. LAW ON DEFAMATION

Libel is a defamatory statement "that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury, or to impeach any person's honesty, integrity, virtue, or reputation. . . ." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011). The broadcasting of defamatory statements read from a script, such as the broadcast in the underlying case, constitutes libel rather than slander. *Dolcefino v. Turner*, 987 S.W.2d 100, 109 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Christy v. Stauffer Publications, Inc.*, 437 S.W.2d 814, 815 (Tex. 1969)). "Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court." *Id.* We must examine the alleged defamatory statement "in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Id.* (citing *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987)).

State libel laws are limited by the constitutional guarantees of free speech and free press as set forth in the First Amendment of the United States Constitution. *See id.* (citing *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 30 (1971)); U.S. CONST. amend I. A showing of substantial truth of the broadcast by a defendant at a summary judgment

5

hearing will defeat a defamation cause of action. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex. 1990). The test used in determining whether the broadcast is substantially true involves consideration of whether, in the opinion of the average listener, the alleged defamatory statement was more damaging to the plaintiff's reputation than a truthful statement would have been. *See id.* "This evaluation involves looking to the 'gist' of the broadcast." *Id.* "If the underlying facts as to the gist of the defamatory charge are undisputed, then we can disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law." *Id.* (citing *Crites v. Mullins*, 697 S.W.2d 715, 717–18 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.)).

## III. STANDARD OF REVIEW

"The purpose of a summary judgment proceeding is to provide a speedy means for the disposition of controversies which do not present fact issues." *New Jersey Bank (N.A.) v. Knuckley*, 637 S.W.2d 920, 921–22 (Tex. 1982). A motion for summary judgment is appropriate when there is no genuine issue of material fact. *See* TEX. R. CIV. P. 166a. A no-evidence motion for summary judgment can be granted when there is no evidence of one or more essential elements of plaintiffs' claims. *See* TEX. R. CIV. P. 166a(i).

The standards we apply in reviewing a trial court's grant of a summary judgment are:

1.  The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

6

2.  In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3.  Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).   When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded.   *Delgado v. Burns*, 656 S.W. 2d 428, 429 (Tex. 1983).   Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991), or by conclusively establishing every factual element of an affirmative defense.   *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).   We use summary judgments "to eliminate patently unmeritorious claims and untenable defenses."   *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Where, as here, the trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the summary judgment grounds advanced by the movant are meritorious.   *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).   We address the grounds set forth in KZTV's motion in turn.[1]

---

[1] We do not address two of the grounds KZTV asserted in their motion for summary judgment—that the complained-of statements were privileged and that there was no evidence of plaintiffs' damages—because Alonzo, Guadalupe, and Baldwin Roofing failed to address them in their briefing. Accordingly, these points are conceded.   *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990) (noting that "grounds of error not asserted by points of error or argument in the court of appeals

## A. The Investigation Statements Were Literally or Substantially True

In its motion for summary judgment, KZTV first asserted that the statements surrounding the investigation of Alonzo and his work at his brother Guadalupe's roofing company were either literally or substantially true. Truth is an affirmative defense to defamation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.005 (West 2011).

In *McIlvain v. Jacobs*, a news station broadcast a story that City of Houston Water Maintenance Division workers were being investigated for doing private work for their manager, Emerick Jacobs. *See* 794 S.W.2d at 15. The story reported that four city employees were used to care for the elderly father of Jacobs on city time. *Id.* These employees were "were sent by a supervisor each day to the manager's home to care for his father and do other tasks around the house." *Id.* The employees would then put in overtime to ensure that their city jobs were completed. *Id.*

The Texas Supreme Court held that the news station "established the substantial truth of the broadcast as a matter of law." *Id.* at 16. The high court noted that affidavits from an assistant city attorney and a city legal department investigator confirmed the existence of the investigation. *Id.* Further, a formal City of Houston legal department report confirmed that employees were paid their regular city wages while spending time with Jacobs's father at his home or at the hospital when he was ill. *Id.* A Public Integrity Review Group also confirmed that these same employees

are waived"); TEX. R. APP. P. 33.1 (discussing how to preserve error), 38.1 (setting forth the requirements for an appellant's brief). Although summary judgment can be affirmed on these grounds alone, we nonetheless discuss the other grounds asserted in our sole discretion and in the interest of justice.

requested and received overtime after caring for the elder Jacobs to complete their city responsibilities. *Id.*

Similarly, in the underlying case, substantial evidence proves that the investigation surrounding Alonzo's outside work with his brother Guadalupe occurred. The affidavit of Corpus Christi Police Sergeant David Gonzales, which was part of KZTV's summary judgment evidence, describes in detail the investigation Sergeant Gonzales conducted into allegations that certain city building inspectors were taking payoffs for favorable inspections. Corpus Christi police department records also document this massive investigation.

Furthermore, Alonzo himself admitted the truth of some of these statements in his deposition testimony. Specifically, he admitted all of Statement One regarding his outside employment with his brother's roofing company, the portions of Statements Two, Three, and Four that he was on leave for two weeks from his job pending a fact-finding investigation (he specifically objected to the statement "we are discovering links," though), and all of Statement Five that he had to be mindful of which jobs he did for his brother to avoid conflict of interest. Because we hold that the "gist" of KZTV's broadcast proved that the investigation surrounding Alonzo's work with Baldwin Roofing was substantially true, *see id.*, summary judgment was appropriate on this ground.[2]

---

[2] We further note that the outcome of the investigation is irrelevant to this query. *See KTRK Television v. Felder*, 950 S.W.2d 100, 106 (Tex. App.—Houston [14th Dist.] 1997, no writ). Here, the fact that the criminal complaints against Alonzo were ultimately dismissed for procedural and jurisdictional reasons did not detract from the fact that an investigation had occurred. In *Felder*, the Houston court of appeals ruled that:

We are convinced that when, as in this case, the report is merely that allegations were

9

**B. Alonzo, Guadalupe, and Baldwin Roofing were Limited Public Figures, and There is No Evidence of Malice[3]**

KZTV also asserted that Alonzo, Guadalupe, and Baldwin Roofing were limited public figures in this story, and that there was no evidence of malice in reporting the investigation. Therefore, they argued, summary judgment was appropriate.

> Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public figures. General-purpose public figures are those individuals who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. Limited-purpose public figures, on the other hand, are only public figures for a limited range of issues surrounding a particular public controversy.

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1988) (internal citations omitted) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). Whether a person is a public figure is a question of law for the court to decide. *See Klentzman v. Brady*, 312 S.W.3d 836, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.). There are differing burdens of proof for plaintiffs suing media defendants: if the plaintiff is deemed a public figure, they must prove that the media defendant published the alleged defamatory statement with actual malice. *See id.* at 905–06 (quoting *Gertz*, 418 U.S. at 342). If the plaintiff is deemed a private person, however, they must only show that the media defendant acted negligently. *Entravision Commc'ns Corp. v. Belalcazar*, 99

---

made and they were under investigation, *McIlvain* only requires proof that allegations were in fact made and under investigation in order to prove substantial truth. Otherwise, the media would be subject to potential liability every time it reported an investigation of alleged misconduct or wrongdoing by a private person, public official, or public figure.

*Id.*

[3] We combine one of KZTV's grounds for summary judgment—that there was no evidence of malice—into this discussion of Alonzo and Guadalupe as limited public figures because the issues are intertwined.

S.W.3d 393, 399–400 (Tex. App.—Corpus Christi 2003, pet. denied).

Here, we must determine whether Alonzo was a limited public figure.[4] The Texas Supreme Court has set forth a three-part test to determine whether a person is a limited-purpose public figure:

> (1) Was the controversy at issue public both in the sense that people were discussing it and people other than the immediate participants in the controversy were likely to feel the impact of its resolution?
>
> (2) Did the plaintiff have more than a trivial or tangential role in the controversy?
>
> (3) Was the alleged defamation germane to the plaintiff's participation in the controversy?

*See McLemore*, 978 S.W.2d at 571.

First, we hold that the controversy was public. Alonzo, as Chief Building Officer, was a public employee with the City of Corpus Christi. This matter affected more than the immediate participants in the controversy because it dealt with the stewardship of public funds and public's health and safety in ensuring that all buildings properly met

---

[4] KZTV also points out that Alonzo admitted he was a public figure in his deposition:

Q: Okay. So would you say—would you agree that you had a job of significant importance there at the city?

A: Yes.

Q. So you would consider yourself, as far as your job, a public figure then; would that be correct?

A: Yes.

While this evidence is persuasive, the determination of whether one is a public figure is a question of law which a court must decide. *See Klentzman v. Brady*, 312 S.W.3d 836, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

11

municipal code.  *Id.*; *see also Einhorn v. LaChance*, 823 S.W.2d 405, 412 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) (defining a public controversy as something that affects the general public in some appreciable way).  Second, Alonzo, Guadalupe, and Baldwin Roofing played much more than a "trivial or tangential" role in the controversy—their actions were the subject of the investigation by the F.B.I. and Corpus Christi police into possible alleged bribes among city inspectors, as evidenced by police department records, criminal complaints, and multiple sworn affidavits.  *See McLemore*, 978 S.W.2d at 571.  Third, the alleged defamation—that Alonzo, Guadalupe, and Baldwin Roofing were engaged in possible wrongdoing through Alonzo's outside employment—was germane to the controversy.  *Id.*  In light of the foregoing, we hold that Alonzo, Guadalupe, and Baldwin Roofing were limited-purpose public figures.

As limited-purpose public figures involved in a matter of public concern, Alonzo, Guadalupe, and Baldwin Roofing therefore had to prove that KZTV published these alleged defamatory statements with actual malice.  *See McLemore*, 978 S.W.2d at 571. "Actual malice" means publication of a false statement knowing the statement was false, or with reckless disregard for the truth.  *See id.*; *see also Gertz v. Welch*, 418 U.S. 323, 349 (1974).  Actual malice "may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the defendant's words or acts before, at, or after the time of the communication."  *See Turner*, 987 S.W.2d at 111–12.  Even if all published statements are true in isolation, the publication may convey a false or defamatory impression by omitting material facts or suggestively juxtaposing true facts.  *Id.*

12

No such evidence exists here. Instead, KZTV provided ample summary judgment evidence showing the extent of the investigation into possible bribes of city inspectors. KZTV provided police records, reports, affidavits, newspaper articles, and deposition testimony establishing that the investigation, in fact, existed and was ongoing. Because Alonzo, Guadalupe, and Baldwin Roofing were limited-purpose public figures that did not have evidence that KZTV published the broadcast with actual malice, this constitutes yet another basis on which summary judgment was appropriate.

## C.    The Statements were Not Capable of a Defamatory Meaning

KZTV also asserted that the statements it made were opinion or rhetorical hyperbole, not capable of defamatory meaning.

> The Constitution protects statements that cannot reasonably [be] interpreted as stating actual facts about an individual made in debate over public matters in order to provide assurance that public debate will not suffer from lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation.

*Bentley v. Bunton*, 94 S.W.3d 561, 578 (Tex. 2002). KZTV's statement, "If Alonzo Garza had to be careful not to cross the line by inspecting his own work, what about the other inspectors who reported to him and inspected work done by his brother's company? Did they feel pressure to approve work done by Baldwin Roofing?" is an example of rhetorical hyperbole. *See id.* As KZTV points out, "in this case, [KZTV] made the observation of the link between the brothers and their businesses and asked the hypothetical questions arising from the connection between their respective occupations." *See Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989) (opinion are protected by the U.S. and Texas Constitutions); *Dolcefino v. Randolph*, 19 S.W.3d 906

13

(Tex. App.—Houston [14th Dist.] 2000, pet. denied). The other term of art with which Alonzo disagreed, that KZTV was "discovering links," also fits into this category of speech. We agree that this argument provides yet another ground upon which to support the granting of the motion for summary judgment.

## V. CONCLUSION

We uphold the trial court's judgment because summary judgment was appropriate on multiple grounds asserted by KZTV.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
6th day of December, 2012.