

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00164-CV

_____

TODD GALLAHER, Appellant

V.

DENTON MEDIA COMPANY, INC. D/B/A DENTON RECORD CHRONICLE,
Appellee

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. 20-4102-16

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

In this defamation suit, pro se Appellant Todd Gallaher appeals the trial court's granting of summary judgment in favor of Appellee Denton Media Company, Inc. d/b/a Denton Record-Chronicle (the Newspaper). Gallaher contends that the trial court improperly excluded his summary-judgment evidence, that portions of the Newspaper's summary-judgment evidence were incompetent, and that fact issues precluded summary judgment. We will affirm.

## I. Background

### A. Pre-lawsuit facts

Gallaher is a political consultant who was selected in December 2018 to join the staff of Denton County commissioner Dianne Edmondson as her chief administrator. His hiring was subject to a vote of approval by the Denton County Commissioner's Court. At a December 18, 2018 meeting—after the outgoing county judge voiced opposition to hiring Gallaher[1]—the commissioners voted against approving him for the position.

That same day, the Newspaper published its first of a series of four articles that detailed the circumstances of Gallaher's potential hiring and allegations that he had been prosecuted for misconduct during the 2008 primary election.

---

[1]The outgoing county judge's tenure ended on December 31, 2018, and she encouraged the commissioners to "revisit" Gallaher's potential hire after she left office. Gallaher's hire was eventually approved on January 1, 2019.

### 1. December 18, 2018 article

The December 18 article, titled *Incoming Denton County Commissioner Picks Staffer Once Accused of Scheming*, reported that Gallaher had in 2008 been "put on leave" from his job as a staffer for a Texas state representative. According to the article, this followed allegations that Gallaher had used an email address—one that appeared to belong to another Texas state representative—to disseminate damaging photos of a political rival. It also reported that Gallaher had once admitted to impersonating a *Dallas Morning News* reporter to gather information concerning an ethics complaint against his former employer. Commissioner Edmonson was quoted as having said, "I've known Todd for a very long time . . . . I have complete confidence that something that happened over a decade ago is not going to happen in Denton County."

### 2. December 29, 2018 article

The December 29 article, titled *County Officials to Again Try Hiring Aide Once Prosecuted in Political Scheme*, reasserted the misconduct allegations against Gallaher. It further reported that the Newspaper had obtained a document from the Texas Attorney General's office (OAG) showing that Gallaher had been "prosecuted for a charge of misrepresentation of identity in a 2008 primary election" for which he was "given a year of pre-trial diversion and sentenced to 60 hours of community service." This article reported that Gallaher had not "return[ed] an email and a phone call seeking comment." Several public officials from Denton County defended Gallaher's

3

work history, and the local Republican Party chair, who had recently employed Gallaher as a political consultant, told the Newspaper that Gallaher was "very knowledgeable," "a hard worker," and did "good things for the county."

### 3. January 1, 2019 article

The January 1 article, titled *New Year's Day Brings Local Transition of Power*, contained nearly verbatim reporting as that from December 29—that Gallaher had been "prosecuted for a charge of misrepresentation of identity in a 2008 primary election" for which he "was given a year of pre-trial diversion and sentenced to 60 hours of community service" and that he had "not returned multiple requests for comment" from the Newspaper. It noted that Gallaher's hiring had ultimately been approved.

### 4. March 9, 2019 article

The March 9 article, titled *Gallaher, Edmonson's Chief Administrator, Disputes Reporting on 2008 Charge*, outlined a series of emails exchanged between the Newspaper and Gallaher. According to the article, Gallaher denied ever having been put on a leave of absence or charged, prosecuted, or sentenced for misrepresentation of identity. It also quoted Gallaher as having asked in one of the emails, "Does the *Denton Record Chronicle* condone this act of wrongfully increasing the appearance of guilt in my action?"

The article discussed various OAG records related to an investigation involving Gallaher, including a spreadsheet upon which the Newspaper's reporting had been

initially based. It reported that 11-page and 6-page versions of this spreadsheet existed:

> Gallaher referred the newspaper to an 11-page spreadsheet prepared by the Attorney General's Office titled "Election Fraud Violations Prosecutions Resolved." In regard to the allegations against Gallaher, under the heading of "Charge(s)," it lists "Misrepresentation of identity," while under the heading of "Disposition," it states: "Pre-trial diversion for 1 year, 60 hours of community service, completed early." The spreadsheet also contains a disclaimer on Page 11 that states, "This document only reflects cases investigated and/or prosecuted by the OAG."

> However, the document used by the *Record-Chronicle* to inform its earlier reporting is just six pages in length. And while the spreadsheet title, headings[,] and content regarding Gallaher are the same as the 11-page version he referred to, it did not contain a similar disclaimer. The only applicable note included at the bottom was "Investigated by OAG, however presented to, and prosecuted by local district/county attorney."

The March 9 article further reported that Gallaher, when asked for evidence that the Newspaper's reporting had been inaccurate, provided a screenshot from the Texas Department of Public Safety's criminal-history online database showing that a search for "Gallaher, Todd" returned no results. Gallaher was also quoted as having acknowledged in an email to entering a pre-trial diversion program: "'There was no prosecution,' [Gallaher] continued. 'With no charges filed against me, I volunteered to enter a pre-trial program.'"

## B. Trial-court proceedings

On December 27, 2019, Gallaher sued the Newspaper for "DEFAMATION/LIBEL/PER SE." The statements that Gallaher alleged as defamatory can be grouped into three categories:

1. that he was "charged," "prosecuted," and "sentenced" for his involvement in a "political scheme" related to his alleged actions during the 2008 primary elections;

2. that he was "put on leave" for these alleged actions; and

3. that he declined to respond to requests for comment from the Newspaper.

### 1. The Newspaper moves for summary judgment

The Newspaper claimed numerous grounds for summary judgment, including that (1) limitations barred any claim of defamation stemming from the December 18 article, (2) the statutory defense of truth as provided in Section 73.005(b) of the Texas Civil Practice & Remedies Code applied to its statements pertaining to the OAG document, and (3) the statements that Gallaher had declined to respond to the Newspaper's requests for comment were incapable of a defamatory meaning.

In support, the Newspaper included a business-records affidavit from an OAG records custodian that attached two documents related to an OAG investigation into Gallaher for misrepresentation of identity: (1) a 13-page spreadsheet and (2) an incident report. The spreadsheet was titled "Office of the Attorney General of Texas, Election Fraud Violations, Prosecutions Resolved" and contained entries for dozens

6

of election-fraud cases involving many people.[2] The third page of the spreadsheet showed an entry for "Gallaher, Todd" with the following information:

| County[] | Defendant | Allegation | Election Involved | Cause/Case Number[] | Charge[s] | # Offenses Charged | Resolution Date | Statute Violated | Disposition[] |
|---|---|---|---|---|---|---|---|---|---|
| Aransas/Travis | Gallaher, Todd | Misrepresentation of identity – intent to manipulate election or injure candidate | 2008 Primary Election | C08999934 | Misrepresentation of identity | 1 | 5/21/09 | E C 255 005 | Pre-trial diversion for 1 year, 60 hours of community service, completed early |

This spreadsheet also contained a disclaimer that "[t]his document only reflects cases investigated and/or prosecuted by the OAG" and the bottom of each page reads: "Information as of 8/17/2020."

As additional summary-judgment evidence, the Newspaper attached affidavits from the three writers of the articles in question:

### a. Laferney Affidavit

Dalton LaFerney attested that he authored the December 18 and December 29 articles and coauthored the March 9 article. He further attested that, in writing the December 29 article, he used an OAG document titled "Election Fraud Violations Prosecutions Resolved," which identified Gallaher on its third page. Concerning this document, LaFerney stated:

---

[2]The record shows that the content related to Gallaher's case was identical across the 6-, 11-, and 13-page spreadsheets. The versions varied only in their lengths due simply to the rolling number of total cases reported, their disclaimers, and the dates upon which they were accessed. The 6-page spreadsheet was dated as from 2012, and the 11-page spreadsheet contains a footer stating "Information as of 11/16/2018."

[] I had no reason to believe the information in the Texas Attorney General Office record was false.

[] Based on my experience as a journalist in having reported on criminal court proceedings and my understanding of the words in the title of the record "Election Fraud Violations Prosecutions," and the columns in the record titled "Allegations," "Cause/Case Number," "Charge(s)," "Statute Violated," and "Disposition," which reflected under this column guilty pleas, convictions with criminal sanctions, and what I considered plea bargains with deferred adjudication, I concluded the record was of individuals charged with violation or violations of criminal code provisions and the results of the charges.

[] The information in this record beside Gallaher's name was he was accused and charged with violation of Election Code 255.005, which is a criminal misdemeanor concerning the 2008 Primary Election, that he voluntarily entered a pre-trial diversion program and performed 60 hours of community service.

[] Seeing a cause or case number beside his name and the disposition being a "pre-trial" program with community service hours could only be understood to mean some court was in charge of the charges against him that ended []as it did.

### b. Heinkel-Wolfe Affidavit

Peggy Heinkel-Wolfe attested that she wrote the January 1 article and stated that her reporting related to Gallaher's alleged prosecution came from an OAG document titled "Election Fraud Violations Resolved" and "another document obtained from the Attorney General's office." Further, she stated:

[] I saw in this record columns titled "Allegations," "Election Involved," "Cause/Case Number," "Charge(s)," "Statute Violated," and "Disposition," that under that column I found pleas of guilty, convictions with punishment of incarceration, fines and what appeared to be deferred adjudications.

[] Gallaher's name was on page three with allegations made against him concerning the 2008 Primary Election followed by a charge of misrepresentation of identity in violation of Election Code 255.005 resulting in a disposition of his entering a pre-trial program and 60 hours of community service.

[] I concluded the foregoing information along with the heading "Cause/Case Number" meant that all of this took place in some court because only courts have pre-trials.

### c. McCrory Affidavit

Sean McCrory attested that he was the Newspaper's executive editor, that he coauthored the March 9 article, and that it was published at Gallaher's request. McCrory stated that Gallaher had informed him that the Newspaper's reporting had been "based on information 'misinterpreted from a spreadsheet' about the 2008 primary election" because, according to Gallaher, he had never been charged, prosecuted, or sentenced in relation to the alleged election-code violations.

Like LaFerney and Heinkel-Wolfe, McCrory attested that his writing had been informed by an OAG document titled "Election Fraud Violations Prosecutions Resolved" which identified Gallaher on its third page:

[] I saw in this [O]AG record columns titled "Allegations," "Election Involved," "Cause/Case Number," "Charge(s)," "Statute Violated," and "Disposition." Under that last column, I found pleas of guilty, convictions with punishment of incarceration, fines[,] and what appeared to be deferred adjudications.

[] This record reflected the allegations made against [Gallaher] concerning the 2008 Primary Election followed by the charge of misrepresentation of identity in violation of Election Code 255.005 resulting in a disposition of Gallaher entering a pre-trial program, including 60 hours of community service.

9

[] I had no reason not to believe the content of this record.

[] Based on my experience as a journalist in reporting and editing criminal proceedings, I understood the content of the [O]AG record that Gallaher had accepted a plea bargain to avoid a trial on a misdemeanor charge for violation of the Election Code.

**2. Gallaher's summary-judgment response**

Gallaher objected to and moved to strike all of the Newspaper's summary-judgment evidence. He argued that the 13-page spreadsheet was hearsay, irrelevant, dated over one year after the articles' publication, and "misleading to the extent [the Newspaper's] use of such document attempts to show [the Newspaper's] statements are true." He argued that the affidavits were incompetent summary-judgment evidence because they were self-serving statements of interested witnesses, conclusory, without evidentiary support or predicate, vague, unclear, misleading, or assumed facts not in evidence.

According to Gallaher, summary judgment was precluded because the Newspaper had failed to establish its defenses of truth and lack of malice as a matter of law and because three issues of material fact existed: (1) whether the Newspaper published its articles with malice; (2) whether the articles were substantially true; and (3) whether privilege applied to the articles.

As summary-judgment evidence, Gallaher incorporated by reference "all pleadings and documents filed of record" with the trial court and also attached a personal affidavit with a number of exhibits: (1) the four articles in question,

(2) multiple emails between himself and Newspaper employees, (3) a copy of the 11-page OAG spreadsheet, (4) a copy of a criminal-history search from the Texas Department of Public Safety website purporting to show that a search for "Gallaher, Todd" returned no results, and (5) a July 10, 2008 OAG memo.[3]

The OAG memo read in full:

Office of the Attorney General
GREG ABBOTT
MEMO

To: Will Tatum
From: Angela Miller
Date: July 10, 2008
Subject: Campaign Communication

The two laws at issue, § 255.004 and § 255.005, are part of Title 15 of the Election Code. Tex. Elec. Code § 255.004 – 255.005. The Texas Ethics Commission is authorized by the Texas Legislature to "administer and enforce" Title 15 of the Election Code. Tex. Gov't Code § 571.061. The Commission rules clearly state that "campaign communications" do not include email and that this definition applies to Title 15 of the Election Code "unless the context clearly indicates otherwise." Texas Ethics Commission Rules, Chap. 20(A) § 20.1. The broader definition of campaign communication ("a written or oral communication [ ].") is also fund [sic] in Title 15. Tex. Elec. Code § 251.001. I did not find any case law which mentioned this issue, and nothing which suggested that the Ethics Commission's definition should not apply to "campaign communications" in this case.

Gallaher attested that he had never been placed on a leave of absence, had a "former case" opened against him, or been prosecuted, charged, or sentenced for alleged misrepresentation of identity during the 2008 election. He attested that he had,

_____

[3]The Newspaper did not reply to Gallaher's response or object to his summary-judgment evidence.

11

on multiple occasions before the December 29 and January 1 articles, responded by email to the Newspaper's requests for comment by informing the Newspaper that the articles contained "false and/or inaccurate information." One such email exchange between Gallaher and Laferney from December 18 is illustrative:

> **Gallaher:** Your article contains false facts . . . . Please correct the facts . . . .

> **Laferney:** I called you four times. Called you just now, as soon as I received this email. Can you give me a call back? I am calling to get the story straight. Which facts are false?

> **Gallaher:** It is not my responsibility to verify facts for you.

> **Laferney:** It is my job to explore the facts and verify them. And that is why I called you multiple times. But you are literally not participating in that process by not taking my calls. That is a decision you're making. If you would like the accurate information circulated, I suggest you play ball and take a couple of questions.

> **Gallaher:** You are responsible for the information being accurate. You are compensated for that work. If you want to compensate me for verifying facts, send a contract. There are multiple incorrect statements. I am not spending my time doing your work for free.

> **Laferney:** I'm doing my job by asking you which statements are incorrect. You, Todd, brought this to my attention, and you, Todd, will not clarify which statements are inaccurate. Do you understand? . . . If you would like to clarify which facts are inaccurate, please let me know.

> **Gallaher:** It appears you took incorrect information from other news articles instead of verifying facts. This is your work. It is your responsibility to verify your work product. You are compensated for this work. It is not my responsibility to do your work for you. Being forced to participate in this work of yours is something that does not interest me. In my opinion, you have a higher responsibility than you have demonstrated in this article.

According to Gallaher, he had emailed the Newspaper provisions from Section 20.1 of the Texas Election Code and the above-described "internal OAG memo" which, he claimed, showed that his alleged actions during the 2008 primary election did not violate the election code.

Gallaher also attested that an online search of the Travis County criminal records revealed nothing related to him and that the Newspaper never indicated to him that it possessed "any independently verified information" on which to base its reporting. Further, contrary to the March 9 reporting, Gallaher stated that he had never referred the Newspaper to the 11-page spreadsheet and that the Newspaper had never mentioned to him that its reporting was based on the 6-page spreadsheet.

### 3. Trial court's judgment and ruling

The trial court overruled Gallaher's objections and denied his motion to strike the Newspaper's summary-judgment evidence. It granted summary judgment for the Newspaper without specifying the grounds on which its ruling relied.

## II. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the

nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### III. Discussion

We interpret Gallaher's briefing as raising five issues on appeal: whether (1) the trial court improperly excluded his summary-judgment evidence; (2) portions of the Newspaper's summary-judgment evidence were incompetent; (3) a fact issue existed regarding the Newspaper's defense of truth; (4) a fact issue existed on the Newspaper's assertion of privilege; and (5) a fact issue existed about whether the Newspaper acted with negligence or malice.

## A. Gallaher's first and second issues were waived for appellate review

Although we are to construe pro se briefs liberally, we also must hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *In re P.S.*, 505 S.W.3d 106, 111 (Tex. App.—Fort Worth 2016, no pet.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)). An appellant's brief must contain a clear and concise argument, including appropriate citations to the record and legal authority. Tex. R. App. P. 38.1(i). This requirement is not satisfied by merely uttering brief conclusory

statements unsupported by legal citations. *In re P.S.*, 505 S.W.3d at 111 (quoting *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Texas. App.—Houston [1st Dist.] 2002, pet. denied)). Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint. *Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *5 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.). An appellate court has no duty or right to independently review the record and applicable law to look for error. *Id.*

**1. Argument that the trial court improperly excluded his summary-judgment evidence**

Gallaher's argument that the trial court improperly excluded his summary-judgment evidence reads in its entirety:

F. The trial court improperly excluded Gallaher's relevant evidence.

a. Gallaher's Objections, Motion to Strike and Response to Defendant's Motion for Summary Judgment filed 3/2/21 document evidence that is relevant to Gallaher's claim of #1.

b. Gallaher's Objections, Motion to Strike and Response to Defendant's Motion for Summary Judgment filed 3/2/21 document evidence that is relevant to Gallaher's claim of #2.

Gallaher cites no supporting authority or record evidence. *See* Tex. R. App. P. 38.1(g). Further, Gallaher does not point us to a trial court ruling—and we find none—to support his contention that the trial court *did* exclude his summary-judgment evidence. *See* Tex. R. App. P. 33.1(a) (requiring that the record must show a

15

timely complaint and ruling with the trial court to preserve appellate review). Accordingly, we hold that Gallaher waived his first issue.

**2. Gallaher's objections to the Newspaper's summary-judgment evidence**

Gallaher complains that the Newspaper's OAG business-records affidavit and the affidavits from Laferney and Heinkel-Wolfe were incompetent summary-judgment evidence. He timely objected to and moved to strike this evidence, and the trial court denied his motion. *See* Tex. R. App. P. 33.1(a).

Gallaher contends that the OAG business-records affidavit was incompetent summary-judgment evidence because it sponsored the 13-page spreadsheet from 2020—that is, "records created after the publication of the articles (years later)." He continues that

> [a]s a matter of law, to the extent an objection was needed, the Court should have sustained Gallaher's objections. However, the summary[-]judgment evidence is defective as a matter of law based on a plain review of the dates of such records. In other words, the [Newspaper] could not have relied on records created by the [OAG] after the publication of the articles.

Gallaher next argues that the Laferney and Heinkel-Wolf affidavits were incompetent summary-judgment evidence because the affiants failed to "identify or articulate what [OAG] records they reviewed or relied upon." He continues that

> [t]he parties don't even indicate that they reviewed the attached records from the OAG, dated in 2020. The Court should have sustained any objection to such effect. However, as a matter of law, the summary[-]judgment evidence is conclusory and is incompetent and is error for the Court to allow such to support summary judgment.

16

Neither of Gallaher's objection arguments cites to any supportive legal authority. They consist solely of brief conclusory statements and give us no substantive legal analysis to consider. *See In re P.S.*, 505 S.W.3d at 111. Accordingly, we hold that Gallaher waived his second issue.

## B. Statements from the December 18 article barred by statute of limitations

Gallaher alleged that he was defamed by statements in the December 18 article that he was "put on leave" for political "scheming." The Newspaper argued in its summary-judgment motion and on appeal that the statute of limitations barred any claims related to the December 18 article.[4] We agree.

"[T]o obtain traditional summary judgment on a limitations defense, the defendant must conclusively prove (1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter . . . ." *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021). The statute of limitations on a defamation claim is one year from the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a); *see Glassdoor, Inc. v. Andara Grp., LP*, 575 S.W.3d 523, 527–28 (Tex. 2019). Defamation claims generally accrue when the allegedly defamatory matter is first published or circulated and made available to the publisher's intended audience. *Glassdoor, Inc.*, 575 S.W.3d at 528.

This article was first published on December 18, 2018, but Gallaher did not file suit until more than a year later, on December 27, 2019. Thus, the Newspaper was

---

[4]Gallaher failed to address this argument both in the trial court and on appeal.

entitled to summary judgment on its limitations defense related to alleged defamatory comments from the December 18 article.

**C. Statements that Gallaher was "charged," "prosecuted," and "sentenced" for involvement in a "political scheme" protected by statutory defense**

Gallaher's chief allegation was that the Newspaper defamed him by publishing multiple statements in the December 29, January 1, and March 9 articles that he was "charged," "prosecuted," and "sentenced to 60 hours of community service" for his involvement in an alleged "political scheme." The Newspaper argued that these statements were protected by the statutory defense of truth found in Subsection 73.005(b) of the Texas Civil Practice and Remedies Code. In his third issue, Gallaher contends that his summary-judgment evidence raised a fact issue about whether the Newspaper established that defense. We will hold that the Newspaper established as a matter of law its Subsection 73.005(b) defense related to the statements that Gallaher was charged, prosecuted, and sentenced for a political scheme.

Section 73.005 provides that

(a) The truth of the statement in the publication on which an action for libel is based is a defense to the action.

(b) In an action brought against a newspaper or other periodical or broadcaster, the defense described by Subsection (a) applies to an accurate reporting of allegations made by a third party regarding a matter of public concern.

Tex. Civ. Prac. & Rem. Code. Ann. § 73.005; *see Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex. 2019) ("[M]edia outlets that accurately report allegations

made by a third party about matters of public concern can assert the truth as a defense."). It is well settled that the commission and prosecution of crimes and related proceedings are matters of public concern; so too is the disclosure of alleged misbehavior of a public official. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (citing *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 1045 (1975)).

Gallaher maintains that a fact issue existed surrounding the Newspaper's truth defense because he "never violated the Texas Election Code Statute, never was arrested, never was charged, and never was prosecuted" and was, in fact, "exonerated" of any such wrongdoing. In support, he points us to three pieces of summary-judgment evidence: (1) the July 10, 2008 OAG memo, which opined generally that "campaign communications" do not include email communications for purposes of enforcing Section 255.005 of the election code; (2) the copy of the criminal-history search from the Texas Department of Public Safety website purportedly showing that a search for "Gallaher, Todd" returned no results; and (3) the variation in the disclaimers on the 11- and 13-page spreadsheets. In essence, Gallaher argues that this evidence raised a fact issue about whether he was actually prosecuted and formally charged rather than merely investigated for misconduct related to the 2008 elections.

Gallaher misunderstands what the Newspaper was required to show to be entitled to the Subsection 73.005(b) statutory defense. His arguments and evidence seek to establish that a fact issue existed about whether he was *actually* prosecuted,

charged, or sentenced. But it is fundamental to First Amendment and defamation jurisprudence that the media "enjoy a privilege to report on judicial and official proceedings *without regard for whether the information from such proceedings is actually true.*" *Dall. Morning News, Inc.*, 579 S.W.3d at 381 (emphasis added) (citing Tex. Civ. Prac. & Rem. Code Ann. § 73.005(b)); *see KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 715 (Tex. 2016). Thus, to be accorded summary judgment on this so-called "third-party allegation" defense, the Newspaper had only to conclusively prove that it accurately reported the information it received from the OAG—which it did. *See Dall. Morning News, Inc.*, 579 S.W.3d at 380.

The article writers attested that their reporting was based on an OAG document titled "Election Fraud Violations Prosecutions Resolved" that contained on its third page a row dedicated to "Gallaher, Todd." The record shows that every iteration of this spreadsheet alleged identical information about an OAG case involving Gallaher:

- He was labeled a "Defendant," and his case was assigned a cause number;

- His case was listed among dozens of other election-fraud violation "prosecutions" resolved by the OAG;

- His "charge" was for one count of misrepresentation of identity with intent to manipulate or injure a candidate during the 2008 primary election, in violation of Section 255.005 of the Texas Election Code;

- His case was resolved on May 21, 2009; and

20

- The "disposition" of his case was "[p]re-trial diversion for 1 year, 60 hours of community service, completed early."

Moreover, each article expressly qualified its reporting with sourcing language to the same effect:

- December 29 article: "according to a Texas Attorney General's Office document obtained by the *Denton Record-Chronicle*."

- January 1 article: "[a]ccording to state documents obtained by the *Denton Record-Chronicle*."

- March 9 article: "based off a Texas Attorney General's Office document obtained by the [N]ewspaper."

Also drawing from the OAG spreadsheet, Laferney attested that he referred to Section 255.005 of the election code to inform his reporting that Gallaher had been involved in a "political scheme." Section 255.005 is part of Title 15 of the Texas Election Code, which regulates "political funds and campaigns." 15 Tex. Elec. Code Ann. §§ 251.001–258.009. Specifically, Section 255.005 makes it a class A misdemeanor for a person to misrepresent his identity "in political advertising or a campaign communication." Tex. Elec. Code Ann. § 255.005. A "scheme" is commonly understood as "a plan or program of action." *Scheme*, MERRIAM-WEBSTER, www.merriam-webster.com/dictionary/scheme (last visited June 2, 2022); *see Trimble v. Fed. Nat'l Mortg. Assoc.*, 516 S.W.3d 24, 32 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (referring to commonly understood definition of relevant term in a property dispute to hold that summary judgment was appropriate).

21

Accordingly, the Newspaper conclusively proved that it accurately reported from the OAG spreadsheet when it stated that Gallaher had been involved in an alleged "political scheme."

Likewise, the Newspaper conclusively proved that its reporting involved a matter of public concern because (1) it was related to the OAG's alleged criminal prosecution and related proceedings against Gallaher and (2) at the time of the articles, Gallaher either had been engaged to serve or was actually serving as a public official in Denton County. *See Brady*, 515 S.W.3d at 884.

In light of this, we hold that the Newspaper conclusively proved that it accurately reported the allegations contained in the OAG spreadsheet when it stated that Gallaher had been "charged," "prosecuted," and "sentenced to 60 hours of community service" for his involvement in an alleged "political scheme" and that this constituted a matter of public concern.

Gallaher seems to imply that the Newspaper did not accurately report the OAG's allegations when it stated that he was "sentenced" to community service as a requirement of his pretrial diversion. We are mindful that completing a pretrial diversion program does not generally lead to a criminal sentencing under Texas law. *See Lee v. State*, 560 S.W.3d 768, 770 (Tex. App.—Eastland 2018, pet. ref'd). But, in a defamation case, "[t]echnical errors in legal nomenclature do not cause a statement to be false," *Dolcefino v. Turner*, 987 S.W.2d 100, 115 (Tex. App.—Houston [14th Dist] 1998), *aff'd*, 38 S.W.3d 103 (Tex. 2000), and "[a] statement need not be true in every

22

detail" for a defendant to be entitled to the statutory defense of truth, *Cram Roofing Co., v. Parker*, 131 S.W.3d 84, 90 (Tex. App.—San Antonio 2003, no pet). Thus, to the extent Gallaher raised this argument, we overrule it.

**D. Statements that Gallaher declined to return requests for comment are not capable of a defamatory meaning**

We are left to consider whether summary judgment was appropriate for the Newspaper regarding its statements from the December 29 and January 1 articles that Gallaher had declined to respond to requests for comment. Gallaher contends that he did, in fact, respond to requests for comment from the Newspaper and attached as summary-judgment evidence multiple emails between himself and the Newspaper to support this contention. The Newspaper responds that its declined-to-respond statements are not capable of a defamatory meaning. We agree with the Newspaper.

Summary judgment is appropriate when a dispositive question of law is involved. *Averitt v. PriceWaterhouseCoopers L.L.P.*, 89 S.W.3d 330, 333 (Tex. App.—Fort Worth 2002, no pet.) (citing *Rhone-Poulenc, Inv. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999)). Whether unambiguous statements are reasonably capable of a defamatory meaning is a question of law for the trial court to answer. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). A statement is defamatory if it tends to injure a person's reputation, to expose them to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity, or virtue. *Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 835 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

23

The court is to construe the statements as a whole in light of surrounding circumstances based on how a person of ordinary intelligence would perceive the entire statement. *Musser*, 723 S.W.2d at 655. "Statements alleged to be defamatory must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." *Tomlinson v. McComas*, No. 02-11-00175-CV, 2011 WL 5607604, at *4 (Tex. App.—Fort Worth Nov. 17, 2011, pet. denied) (mem. op.) (citing *Musser*, 723 S.W.2d at 655).

Writing that Gallaher declined to comment for a news story is unambiguous and not an allegation of any wrongful conduct. *See Chehab*, 619 S.W.3d at 835. A person of ordinary intelligence would recognize that a person might decline to comment on a news story about himself for myriad innocuous reasons. This is particularly true here when we view the articles together. *See MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 377–78 (Tex. App.—Beaumont 2005, no pet.) (citing *Musser*, 723 S.W.2d at 653) (instructing that, because statements were alleged as defamatory across a series of newspaper articles, it was required to "examine the published articles at issue in their entirety rather than examine separate sentences or words excerpted from such articles").

The Newspaper's first article from December 18 quoted Commissioner Edmonson as having said that she had "complete confidence" in Gallaher. The December 29 article cited numerous local officials who defended Gallaher, with one

24

noting that he did "good things for the county." The January 1 article reported that Gallaher was ultimately approved and hired for the position with Commissioner Edmonson. And the March 9 article—aptly titled *Gallaher, Edmonson's chief administrator, disputes reporting on 2008 charge*—provides an in-depth discussion of Gallaher's responses to and disagreements with the Newspaper's earlier reporting. In other words, the Newspaper's statements that Gallaher initially declined to comment on its reporting must be juxtaposed against and read together with multiple quotes bolstering his character and a fourth and final entire article dedicated to the comments he provided to the Newspaper. Thus, we hold as a matter of law that these statements are not capable of a defamatory meaning when viewed in their proper context by a person of ordinary intelligence. *See Musser*, 723 S.W.2d at 655.

## IV. Conclusion

Having held that the Newspaper was entitled to summary judgment on all alleged defamatory statements, we need not consider Gallaher's fourth and fifth issues. *See* Tex. R. App. P. 47.1. We affirm.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: June 9, 2022

25